**STATE OF OHIO, Petitioner for Reclamation-Appellant,**

v.

**FOUR SEASONS NURSING CENTERS OF AMERICA, INC., Debtor-Appellee.**

No. 71-1559.

United States Court of Appeals, Tenth Circuit.

Aug. 3, 1972.

26

Richard North Patterson, Asst. Atty. Gen. (William J. Brown, Atty. Gen., A. L. Gretick, Executive Asst. to the Atty. Gen., Columbus, Ohio, on the brief), for petitioner-appellant.

Arthur F. Mathews, Washington, D. C. (Michael R. Klein and Robert B. McCaw, Washington, D. C., on the brief), for appellee, Jack L. Clark.

John A. Johnson, Oklahoma City, Okl., for debtor-appellee.

Before JONES,* HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is an appeal by the State of Ohio from the denial of its reclamation petition filed against the debtor corporation, Four Seasons Nursing Centers of America, Inc. Four Seasons is currently involved in Chapter X Corporate Reorganization Proceedings before the United States District Court for the Western District of Oklahoma. The reclamation petition was denied on July 14, 1971, 329 F.Supp. 647, after a full hearing in that court.

In early 1970, Mr. Jack L. Clark, the president of Four Seasons, received information that a Mr. Ronald R. Howard

* Of the Fifth Circuit, sitting by designation.

of Los Angeles, California, was in a position to assist Four Seasons in borrowing needed funds for continued operation and expansion. Howard and Clark conferred in Oklahoma City for the purpose of consummating an agreement for the procurement of funds. It was anticipated that Four Seasons would borrow between $20,000,000 and $24,000,000 from the State of Ohio. Howard contacted Crofters, Inc., a Columbus, Ohio, investment firm. Mr. Harry A. Groban, the executive vice president of Crofters, requested a credit rating on Four Seasons from the National Credit Office, a division of Dun and Bradstreet. An employee of the National Credit Office procured the latest annual report of Four Seasons, as well as other statements and bank information concerning that corporation from Mr. John Mee, a vice president of and attorney for Four Seasons. Based on this material, the national Credit Office gave Four Seasons a rating of "prime" for commercial paper. This information was communicated by letter to Groban; Groban in turn furnished the information to Mr. Robert F. Gardner, Deputy Treasurer of the State of Ohio.

Groban advised Mee that funds would be available to Four Seasons from the State of Ohio. Thereafter, Mr. Alex Russell, an officer of Four Seasons, went to Columbus, Ohio, to secure the funds. On March 9, 1970, Russell consummated a loan of $3,000,000 for Four Seasons with the State of Ohio through Gardner and in the presence of Groban. The loan was evidenced by two promissory notes of Four Seasons, one for $2,000,000 payable in 120 days and another for $1,000,000 due in two years. The $2,000,000 note was made on the basis of 120 days with the understanding that when due the note would be renewed for a period of two years. A second loan for $1,000,000 was advanced on March 23, 1970; a note for $1,000,000 payable in two years to the State of Ohio was executed on that date.

The State of Ohio sought reclamation of these funds as against the trustee in the reorganization proceedings in the court below. Ohio argued that Four Seasons had intentionally made material and fraudulent misrepresentations concerning its financial condition to the National Credit Office to obtain a rating of prime. In reliance on this rating, the loans of $4,000,000 had been made to Four Seasons by the State of Ohio. Ohio additionally contended that the $4,000,000 loans were in violation of an Ohio statute and therefore void; consequently, the funds should have been returned to· the Ohio State Treasurer. The reclamation petition of the State of Ohio was denied. The trial court found no fraudulent representations in the material furnished the National Credit Office or in procurement of the loans. The Ohio statute in question was adjudged inapplicable. The State of Ohio now appeals.

Appellant advances five arguments in support of this appeal: first, that the claim of appellant against the property held by the trustee must be assessed by reference to the law of Ohio; second, that the loans were made in violation of Ohio law; third, that the prime rating relied upon by the Ohio State Treasurer was obtained through Four Seasons' materially false statements; fourth, that the appellant is entitled to recover the funds under the applicable Ohio standards for recovery of trust property; and fifth, the appellant is alternatively entitled to the return of all funds traceable under traditional tracing rules. We view the narrow issue presented in this appeal to be whether the State of Ohio may properly argue the application of a constructive trust to the funds in question.

■ We reject appellant's arguments that the State of Ohio's claim against the property held by the reorganization trustee must be assessed by reference to the law of Ohio and that Ohio standards for recovery of trust property govern here. Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c), confers the status of an ideal lien creditor on a reor-

ganization trustee.[1] His priority as against a creditor-claimant is determined by the substantive law of the state where the property is located.[2] Thus appellant's right to the property in question will be decided by Oklahoma, not Ohio, law.

■ We likewise reject appellant's argument that the prime rating relied upon by the Ohio State Treasurer in making these loans was obtained through Four Seasons' materially false statements concerning its financial status. The trial court found no fraud or misrepresentation after an evaluation of the testimony presented before it in a full hearing. We hold this decision to be adequately supported by the record; there is no cogent reason to reverse the trial court on this point.[3] Accordingly, we affirm the finding of no fraud or misrepresentation in obtaining the rating of prime from the National Credit Office.

■■ We are unconvinced by appellant's remaining arguments that a constructive trust is applicable to the funds in question. The quantum of evidence required by Oklahoma for imposition of a constructive trust is substantial. Mere preponderance of the evidence is not sufficient to establish a constructive trust. Rather, it must be established by evidence which is clear, definite, unequivocal and satisfactory. The evidence must lead to but one conclusion, or leave no reasonable doubt as to the existence of the constructive trust.[4] The evidence presented by appellant in the trial court does not rise to the quantum required by Oklahoma.

■■ We conclude there was no illegality surrounding the procurement of these funds. We disagree with the trial court that the Ohio statute in question is inapplicable. Ohio Rev.Code, § 135.14 (1967) reads in pertinent part:

> . . . In addition to the investments specified in subparagraphs (A), (B), (C), and (D) of this section, the treasurer of state may invest interim moneys of the state in commercial paper notes issued by any corporation for profit which is incorporated under the laws of the United States, a state, or the District of Columbia, which such notes are rated prime by the National Credit office, Inc., New York, or its successor, provided that the aggregate total amount of interim moneys invested in commercial paper at any time shall not exceed fifty million dollars . . . .

The evidence presented does not satisfactorily prove noncompliance with this statute. It is not disputed by the parties to this appeal that the National Credit Office rates corporations, not individual issues of commercial paper. The National Credit Office's definition of commercial paper is limited to obligations maturing in 270 days. Certainly this definition is not to be incorporated into the Ohio Rev.Code § 135.14, which authorizes investment in commercial paper maturing within two years. As Four Seasons was rated prime by the National Credit Office, the Ohio statute was complied with in this respect. The evidence presented does not establish that the fifty million dollar maximum limit was exceeded when these loans were

---

1. 11 U.S.C. § 110(c) . . . . The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists.

2. In re McClain, 447 F.2d 241 (10th Cir. 1971), cert. denied sub nom Utica Square Nat'l Bank of Tulsa v. Woodson, 405 U. S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788; Carroll v. Holliman, 336 F.2d 425 (10th Cir. 1964), cert. denied, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795.

3. Ryan v. Rolland, 434 F.2d 353 (10th Cir. 1970); Wolfe v. Tri-State Ins. Co., 407 F.2d 16 (10th Cir. 1969).

4. Marshall v. Amos, 471 P.2d 896 (Okl. 1970); Marshall v. Amos, 300 P.2d 990 (Okl.1956).

consummated. The record shows that the cumulative total of commercial paper outstanding on March 9 and 23, 1970, was greater than the fifty million dollar maximum limit, but no evidence was introduced concerning retirements on those dates. No Ohio official could conclusively say the maximum limit had been exceeded on those dates. Application of a constructive trust to these funds in toto or partially, via traditional tracing rules, would be grossly inequitable where no fraud was perpetrated by Four Seasons and no Ohio statutes violated by extension of these loans.

Affirmed.