370 F.Supp. 219 (1974)
In re FOUR SEASONS SECURITIES LAWS LITIGATION
State of Ohio v. Crofters, Inc., Clark, et al.

No. 55
United States District Court, W. D. Oklahoma.
January 18, 1974.
*220 *221 *222 William J. Brown, Atty. Gen., Ohio, Ronald B. Brown, Asst. Atty. Gen., Ohio, Richard F. Stevens, Sp. Counsel to the Atty. Gen., Wayne C. Dabb, Jr., Cleveland, Ohio (Eugene F. McShane, Asst. Atty. Gen., Ohio, John R. Ferguson, Baker, Hostetler & Patterson, Cleveland, Ohio, on the brief), for the State of Ohio.
Arthur F. Mathews, Robert B. McCaw, John H. Korns, Washington, D. C. (Michael R. Klein, Wilmer, Cutler & Pickering, Washington, D. C., Bradley Hummel, Gingher & Christensen, Columbus, Ohio, on the brief), for Jack L. Clark.

*223 OPINION NO. 6

MOTION OF JACK L. CLARK FOR SUMMARY JUDGMENT
THOMSEN, District Judge.[*]
This opinion deals with a motion filed by Jack L. Clark for summary judgment in his favor on the various claims asserted against him in the complaint in this civil action filed by the State of Ohio against Crofters, Inc., Clark and twelve other defendants.[1]
Ohio's claims are based on alleged violations of the Securities Act of 1933, the Securities Exchange Act of 1934 and several Ohio statutory provisions, and on common law fraud.[2]
Clark contends that the claims against him are barred by res judicata and collateral estoppel as a result of rulings adverse to Ohio in the Chapter X reorganization proceedings in this court involving Four Seasons Nursing Centers of America, Inc. (Four Seasons) and related corporations.[3]

FACTS
The history of Four Seasons and related corporations is set out in Opinion No. 2, Four Seasons Securities Laws Litigation, 58 F.R.D. 19, 21-26 (W.D. Okl. 1972).[4] That opinion also contains a capsule history of the Chapter X proceedings filed by Four Seasons and by the related corporations, all of which were consolidated, and a history of the M.D.L. 55 proceedings, involving class actions and other actions filed by stockholders of one or more of the Four Seasons companies against various defendants, including Clark, 58 F.R.D. at 26-28 and 28-36, respectively.

The Ohio Loans
The claims which Ohio is asserting against Clark and others arise out of loans which were made by Ohio to Four Seasons some three months before that corporation filed its Chapter X petition on June 26, 1970. The facts with respect to those loans are set out in the opinion of the Tenth Circuit on Ohio's appeal from the denial of its reclamation petition filed in the Chapter X proceedings. State of Ohio v. Four Seasons Nursing Centers of America, Inc., 465 F.2d 25 (Aug. 3, 1972). The Tenth Circuit stated those facts as follows:
"In early 1970, Mr. Jack L. Clark, the president of Four Seasons, received information that a Mr. Ronald R. Howard of Los Angeles, California, was in a position to assist Four Seasons in borrowing needed funds for continued operation and expansion. Howard and Clark conferred in Oklahoma City for the purpose of consummating an agreement for the procurement of funds. It was anticipated that Four Seasons would borrow between $20,000,000 and $24,000,000 *224 from the State of Ohio. Howard contacted Crofters, Inc., a Columbus, Ohio, investment firm. Mr. Harry A. Groban, the executive vice president of Crofters, requested a credit rating on Four Seasons from the National Credit Office, a division of Dun and Bradstreet. An employee of the National Credit Office procured the latest annual report of Four Seasons, as well as other statements and bank information concerning that corporation from Mr. John Mee, a vice president of and attorney for Four Seasons. Based on this material, the National Credit Office gave Four Seasons a rating of `prime' for commercial paper. This information was communicated by letter to Groban; Groban in turn furnished the information to Mr. Robert F. Gardner, Deputy Treasurer of the State of Ohio.
"Groban advised Mee that funds would be available to Four Seasons from the State of Ohio. Thereafter, Mr. Alex Russell, an officer of Four Seasons, went to Columbus, Ohio, to secure the funds. On March 9, 1970, Russell consummated a loan of $3,000,000 for Four Seasons with the State of Ohio through Gardner and in the presence of Groban. The loan was evidenced by two promissory notes of Four Seasons, one for $2,000,000 payable in 120 days and another for $1,000,000 due in two years. The $2,000,000 note was made on the basis of 120 days with the understanding that when due the note would be renewed for a period of two years. A second loan for $1,000,000 was advanced on March 23, 1970; a note for $1,000,000 payable in two years to the State of Ohio was executed on that date." 465 F.2d at 26, 27.

Ohio's Reclamation Petition in the Chapter X Proceedings
Ohio sought reclamation of the money loaned as against the Trustee in the Chapter X reorganization proceedings. Ohio argued that Four Seasons had intentionally made material and fraudulent misrepresentations concerning its financial condition to the National Credit Office to obtain a rating of prime, and that in reliance on this rating the loans of $4,000,000 had been made to Four Seasons by the State. Ohio also contended that the $4,000,000 loans were in violation of an Ohio statute and therefore void; consequently, the funds should have been returned to the State Treasurer. 465 F.2d at 27.
The reclamation petition was denied by Chief Judge Bohanon, with an opinion which included findings of fact and one conclusion of law. 329 F.Supp. 647 (July 14, 1971). His last two findings of fact were as follows:
"14. There is no intimation in this record that Four Seasons defrauded the State of Ohio or made any misrepresentations to the State of Ohio, but at all times dealt above board and submitted all information requested and withheld nothing. Mr. Gardner made no reliance upon any alleged fraudulent document or statement made by the debtor corporation, its officers or agents, and no fraud here exists, and no misrepresentations were made to the State of Ohio, or others.
"15. Under the circumstances it would be grossly inequitable to all of the other creditors of the debtor corporation to allow Ohio to have the preference which it seeks." 329 F. Supp. at 651, 652.
In support of his conclusion  "that the Petition for Reclamation must be denied"  Judge Bohanon quoted passages from 37 Am.Jur.2d (Fraud and Deceit, §§ 438, 445), pp. 598, 609, and the following statement in Manly v. Ohio Shoe Co., 25 F.2d 384 (4 Cir. 1928):
"Bankrupt's fraud, to justify rescission of contract and reclamation of goods by seller, must be established to the satisfaction of the court by clear, unequivocal, and convincing evidence."

Ohio's Appeal from the Denial of Its Reclamation Petition
Ohio's arguments on appeal from Judge Bohanon's decision were summarized *225 in the opinion of the Tenth Circuit, 465 F.2d at 27. The opinion then stated: "* * * We view the narrow issue presented in this appeal to be whether the State of Ohio may properly argue the application of a constructive trust to the funds in question."
The Tenth Circuit held that "appellant's right to the property in question will be decided by Oklahoma, not Ohio, law". 465 F.2d at 28. The opinion continued:
"We likewise reject appellant's argument that the prime rating relied upon by the Ohio State Treasurer in making these loans was obtained through Four Seasons' materially false statements concerning its financial status. The trial court found no fraud or misrepresentation after an evaluation of the testimony presented before it in a full hearing. We hold this decision to be adequately supported by the record; there is no cogent reason to reverse the trial court on this point. Accordingly, we affirm the finding of no fraud or misrepresentation in obtaining the rating of prime from the National Credit Office.
"We are unconvinced by appellant's remaining arguments that a constructive trust is applicable to the funds in question. The quantum of evidence required by Oklahoma for imposition of a constructive trust is substantial. Mere preponderance of the evidence is not sufficient to establish a constructive trust. Rather, it must be established by evidence which is clear, definite, unequivocal and satisfactory. The evidence must lead to but one conclusion, or leave no reasonable doubt as to the existence of the constructive trust. The evidence presented by appellant in the trial court does not rise to the quantum required by Oklahoma." 465 F.2d at 28.
The Tenth Circuit also concluded that "there was no illegality surrounding the procurement of these funds". It disagreed with the trial court that "the Ohio statute in question is inapplicable". After quoting the pertinent parts of that statute,[5] the Court said: "The evidence presented [by appellant in the trial court] does not satisfactorily prove noncompliance with this statute." 465 F.2d at 28. The opinion then set out the reasons for that statement, and concluded: "Application of a constructive trust to these funds in toto or partially, via traditional tracing rules, would be grossly inequitable where no fraud was perpetrated by Four Seasons and no Ohio statutes violated by extension of these loans." 465 F.2d at 28, 29.

Clark's Participation in Opposition to Ohio's Petition
At the time the Chapter X proceedings were instituted and at the time Ohio's petition for reclamation was filed and heard in the District Court, Clark was a stockholder of Four Seasons, the debtor against which that petition was filed. Ohio's petition for reclamation was served on and opposed by the Trustee for the debtor, through his court-appointed attorney. It was not served on Clark. However, as permitted by 11 U. S.C. § 606,[6] Clark, through his attorney, *226 had theretofore entered his appearance in the Chapter X proceedings; he participated in various hearings therein, including the hearings on Ohio's reclamation petition. Clark was listed as an appellee, made a motion with respect to the record, and filed a brief in the Tenth Circuit in opposition to Ohio's appeal, although he had meanwhile disposed of his stock in Four Seasons.[7]
Clark's principal interest in Ohio's petition was based on the fact that Ohio contended that its loans were procured by fraudulent action on the part of officers and agents of Four Seasons, including Clark. Clark was then a defendant in all or almost all of the actions, some of which were class actions, filed in 1970 and 1971 in several districts against officers of the Four Seasons corporations, their principal underwriter, their accountants, and others, which were transferred to this district under 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings.[8] Investigations by one or more grand juries were pending or projected.

Early Plans and Approval of the Second Amended Plan of Reorganization (Restated)
The development of the successive plans of reorganization and a summary of the Second Amended Plan of Reorganization (Restated), hereinafter referred to as "the plan", are set out in 58 F.R.D. at 27, 28, and need not be repeated in detail here. It is sufficient to note that the plan provided that one-third of the stock of the reorganized corporation (Anta), should go to "Class G  Creditor Stockholders", defined as persons who (1) purchased stock or other securities of debtors (either directly from debtors or in the securities markets) on or before July 22, 1970 (the date of the filing by the Equity Corporation of its Chapter X petition), and (2) filed claims, in a manner and within the time fixed by the court in the order approving the plan, for the amount of the loss suffered by them, the loss being defined as the excess of amounts paid by them for all such purchases, over the amounts realized by them from all sales of such securities.[9] Two groups opposed this feature of the plan, one claiming it treated Class G too well, and the other claiming it did not treat Class G well enough. The SEC filed an elaborate advisory report, dated March 16, 1972, outlining the history of the Four Seasons corporations and their security offerings and making a number of statements which supported the contentions of the creditor-stockholders that they had been defrauded in the purchase of their shares.[10] After hearings on objections to the settlement of the Class G claims, Judge Bohanon filed an opinion and order on March 21, 1972, in which he found: "There is a strong probability that fraud and other violations of the Federal Securities Acts have occurred, for which the debtor estates would be *227 liable to the Class `G' claimants". He approved the settlement of the Class G claims.[11] On July 17, 1972, he entered an order approving and confirming the Second Amended Plan of Reorganization (Restated).

The Appeal from the Order Approving the Plan
Finley et al. appealed from that order, but it was affirmed by the Tenth Circuit. In re Four Seasons Nursing Centers of America, Inc., 472 F.2d 747 (Jan. 5, 1973).[12] One of the contentions made by Finley et al. was "that the plan erroneously assumes the validity of the unliquidated claims of the Class G claimants". Dealing with that argument, the Tenth Circuit said, in pertinent part:
"The trial court's decision at bar, the effect of which was to give to the Class G group the standing of claimant-creditors, was made only after a very careful consideration of the underlying evidence. The court determined that there was merit in their contentions that they had been defrauded in the purchase of their shares so that there was a reasonable likelihood that they would have succeeded in litigation.
* * * * * *
"Based then on our conclusion that the Class G claimants were in fact and in law creditors and that their status as shareholders was incidental in the present context, it was certainly proper for the court to determine that they were entitled to be recognized in the reorganization plan." 472 F.2d at 749, 750.

The Instant Action
In March 1972 the State of Ohio, through the office of its Attorney General, filed the instant action, State of Ohio v. Crofters, Inc., Clark, et al., Civil Action No. 72-81, in the United States District Court for the Southern District of Ohio, Western Division.[13] Ohio's complaint includes eleven claims.[14]
The judgment approving the settlement of the M.D.L. 55 class actions had barred prosecution of any and all settled claims against the defendants therein or anyone else by any member of the classes, except by those who had opted *228 out. Ohio had not opted out, but it filed a motion under Rule 60(b), F.R. Civ.P., to be relieved from the operation of that judgment. Ohio's motion was opposed by Clark, by Walston & Co., Inc., and by Arthur Andersen & Co. After an evidentiary hearing this court held that Ohio was entitled to be relieved from the operation of the judgment, for reasons stated in Opinion No. 4, In re Four Seasons Securities Laws Litigation, 59 F.R.D. 667 (W.D.Okla. June 7, 1973). An appeal by Clark, et al., from the order entered pursuant to Opinion No. 4 is now pending in the Tenth Circuit.[15]
On February 27, 1973, Clark had filed a third-party complaint in the instant case against Walston & Co., Inc., and Arthur Andersen & Co. The latter sought to have the Judicial Panel on Multidistrict Litigation transfer the third-party complaint to this court under 28 U.S.C. § 1407. The Panel decided, however, that the entire action should be transferred to this district and assigned to me for coordinated or consolidated pretrial proceedings with the actions already pending in this district. In re Four Seasons Securities Laws Litigation, 361 F.Supp. 636 (Jud. Pan.Mult.Lit. 1973).
Shortly after the transfer, Clark renewed his motion for summary judgment on grounds of res judicata and collateral estoppel; Ohio and Clark agreed that the motion should be disposed of promptly. Two hearings have been held; the record is voluminous, and most of the points have been more than fully briefed. The facts upon which the motion is based are largely a matter of record. The parties are agreed that the court has the power to grant the motion for summary judgment with respect to all or some or none of the claims.

Discussion
The normal rules of res judicata and collateral estoppel apply to decisions of bankruptcy courts. Katchen v. Landy, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In non-diversity cases the federal courts apply their own rules of res judicata. Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946). In cases transferred under 28 U.S.C. § 1407(a) the substantive law of the transferor forum applies after transfer. In re Plumbing Fixtures Litigation, 342 F. Supp. 756, 758 (Jud.Pan.Mult.Lit. 1972).
The general principles which govern the decision of this motion were laid down in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876):
"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

*229 "But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." 94 U.S. 352, 353, 24 L.Ed. 195.
Those passages have been quoted or summarized many times by the Supreme Court and other courts.[16]
The Restatement of the Law of Judgments was published in 1942. Since then, the courts have been faced with questions of res judicata and collateral estoppel in a great variety of situations.[17] Tentative Draft No. 1, Restatement of the Law Second, Judgments (March 28, 1973), hereinafter referred to as the "New Draft", deals with the Topics treated in Chapter 3 of the Restatement.[18] The Reporter's Notes to the several sections of the New Draft discuss many of the recent decisions on the questions raised by the pending motion.[19]
The filing of a reorganization petition under Chapter X of the Bankruptcy Act institutes an in rem proceeding of an equitable nature. 1B Moore's Federal Practice (2d ed. 1965), ¶ 0.419 [3.1], at p. 2961. A federal court sitting in such a reorganization proceeding has only the jurisdiction and powers conferred by the statute, expressly or by implication. 6 Collier on Bankruptcy (14th ed. 1972), ¶ 3.05, at p. 429 et seq. Bankruptcy proceedings often combine proceedings with respect to status (e. g., adjudication of insolvency or bankruptcy of the debtor) with other proceedings in rem or proceedings quasi in rem.[20]
The reclamation petition which Ohio filed in the Chapter X proceedings did not seek in personam relief against anyone. Whether that petition be regarded as a proceeding in rem or a proceeding quasi in rem is immaterial to the decision of Clark's present motion for summary judgment, because the controlling principles applicable to that motion would be the same. See Restatement, *230 Judgments, §§ 73 and 75.[21] In the New Draft, as the Reporter's Notes to § 73, p. 196, indicate, § 73 combines, elaborates, and in some respects modifies §§ 73 and 75 of the first Restatement.[22]

Res Judicata  Bar[23]
Clark contends that the denial of Ohio's reclamation petition bars all claims asserted by Ohio against him in the instant action. Clark cites and relies on §§ 61 and 63 of the Restatement, which deal with the effect of personal judgments. Those sections and the cases cited by Clark do not support his contention that the denial of Ohio's reclamation petition is res judicata, in the sense of an absolute bar to the assertion of Ohio's claims against him in the instant action.
Ohio's reclamation petition was not an action in personam against Clark or anyone else. It was filed in a proceeding under Chapter X of the Bankruptcy Act. Jurisdiction in the Chapter X proceedings was limited by the Bankruptcy Act; "the filing of a claim in bankruptcy is not the institution of a plenary suit. It is a claim against assets in the hands of the bankruptcy court, not an action in personam". Meyer v. Fleming, 327 U.S. 161, 170, 66 S. Ct. 382, 387, 90 L.Ed. 595 (1946). See also United States v. Verrier, 179 F. Supp. 336, 344 (D.Me. 1959), and cases cited therein.
"It is well settled that in a proceeding in rem or quasi in rem to determine interests in property the judgment is generally conclusive upon the persons named as defendants solely with respect to their interests in the property." Sherman v. Kirshman, 369 F.2d 886, 889 (2 Cir. 1966), citing, inter alia, §§ 75, 76 of the Restatement.[24]
The judgment which was rendered on Ohio's reclamation petition was rendered in a proceeding based on jurisdiction *231 to determine interests in the estate of the debtor. Such a judgment does not bind anyone with respect to a personal liability unless the court acquires jurisdiction to impose personal liability on him. Restatement § 73, New Draft § 73. See notes 21 and 22, above No such jurisdiction was obtained by the bankruptcy court over Clark.[25]
Ohio asserted no in personam claim against Clark or anyone else in its reclamation petition.
Chapter X provides, in § 206, 11 U.S. C. § 606, that "* * * any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter * * *."[26] Clark was a stockholder of both Four Seasons and the Equity Corporation. His attorney had previously entered his appearance in the Chapter X proceedings. He participated in the proceedings on Ohio's reclamation petition filed therein,[27] and argues that he was a party thereto within the rule stated in § 79 of the Restatement.[28] Even if Clark should be considered a party to Ohio's reclamation petition, the denial of that petition was a judgment in rem. Neither the district court, sitting as a bankruptcy court, nor the Tenth Circuit ever had or acquired any such jurisdiction over Clark as would have permitted a personal judgment against him. Restatement, § 73, particularly paragraph (2) thereof. See note 21, above.
The final decision on Ohio's petition was that Ohio had not established a right to rescind the loan to Four Seasons and to impose a constructive trust on the cash in the hands of the Trustee, or on any other assets on a tracing theory. That decision would bar any new claim or action by Ohio to impose a constructive trust or otherwise reclaim any part of the property of the debtor (Four Seasons) whether based (a) on the same facts or legal theories advanced by Ohio in its reclamation petition or (b) on any other facts or theories. Res judicata operates as a bar to all legal theories that were presented or might have been presented, but only as they affect or might have affected rights or interests in the property of the debtor. The decision did not purport to decide any in personam rights; indeed, as we have seen, the court had no jurisdiction to do so in the Chapter X proceedings.[29]
*232 Whether the claims asserted against Clark by Ohio are precluded by collateral estoppel will be considered in the next portion of this opinion.
The denial of Ohio's reclamation petition is not a bar  on grounds traditionally called res judicata  to an action by Ohio asserting personal liability on the part of Clark. Restatement § 73, New Draft § 73.[30]

Collateral Estoppel  Issue Preclusion

(1)
Clark states that he "also relies on the doctrine of collateral estoppel as described in Section 68 of the Restatement of Judgments".[31] However, § 68 of the Restatement deals with personal judgments, not judgments in rem or quasi in rem. The rule applicable to this case is in § 73, dealing with judgments in rem, viz:
"(2) A judgment in such a proceeding will not bind anyone personally unless the court has jurisdiction over him, and it is not conclusive as to a fact upon which the judgment is based except between persons who have actually litigated the question of the existence of the fact."[32]
As we have seen, in the discussion of res judicata, above, the bankruptcy court had no jurisdiction to find Clark personally liable; but Clark was a person who actually litigated the questions of fact upon which the denial of Ohio's reclamation petition was based, and both he and Ohio are bound by the adjudication of litigated matters as if he were a party.[33]
*233 In the New Draft the rules dealing with "Issue Preclusion" are stated in §§ 68 and 68.1. With respect to issue preclusion, as distinguished from res judicata (absolute bar), the same general rules which apply to personal judgments apply also to judgments in rem and judgments quasi in rem. See cross-references under § 73 of the New Draft, and the Reporter's Note to Comment d, pp. 197, 198. The general rule with respect to issue preclusion is stated in § 68 of the New Draft as follows:
"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."
The exceptions to the general rule of issue preclusion are set out in § 68.1.[34] The Reporter's Note to § 68.1 discusses many recent cases.
Both before and after the publication of the Restatement, courts have had to wrestle with the problem of how to formulate and express the proper test or tests for the application of collateral estoppel.[35] The Tenth Circuit stated the applicable principle clearly in Tidewater Oil Co. v. Jackson, 320 F.2d 157, 161 (1963), cert. den., 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273, as follows:
"* * * The essential inquiry, in any case where the conclusive effect *234 of an order or judgment is pleaded, is thus whether the critical issue was within the power and authority conferred upon the first tribunal to which the issue was tendered, and whether the matter pleaded as collateral estoppel was actually adjudicated. See: Restatement On Judgments, § 68(1) and (2). Estoppel cannot `extend beyond the point actually litigated and determined.' Cromwell v. County of Sac, 94 U.S. 351, 354, 24 L. Ed. 195. And, it operates on ultimate, as distinguished from evidentiary, facts. * * *"[36]

(2)
The decision and opinion of the Tenth Circuit on appeal from the order denying Ohio's reclamation petition is the judgment which determines what issues, points or questions of fact (including ultimate facts or mixed questions of fact and law) were actually litigated and determined by a valid and final judgment.[37] What issues or questions of fact were determined by the decision of the Tenth Circuit on Ohio's reclamation petition should be determined by Tenth Circuit law in this case.[38]
In its opinion, after stating the facts set out above under the heading "The Ohio Loans" and summarizing the arguments made by Ohio in the district court, the decision of that court, and the arguments advanced by Ohio on appeal, the Tenth Circuit said:
"We view the narrow issue presented in this appeal to be whether the State of Ohio may properly argue the application of a constructive trust to the funds in question." 465 F.2d at 27.
The Tenth Circuit rejected Ohio's argument that its claim against the property held by the reorganization trustee must be assessed by reference to the law of Ohio, and determined that Ohio's "right to the property in question will be decided by Oklahoma, not Ohio, law". Then followed two paragraphs, quoted earlier in this opinion, but for convenience set out again in the margin.[39] In connection with Ohio's argument based on § 135.14 of Ohio Rev.Code (1967), the Tenth Circuit said: "The evidence presented does not satisfactorily prove noncompliance with this statute." Finally, the Tenth Circuit stated: "Application of a constructive trust to these funds in toto or partially, via traditional tracing rules, would be grossly inequitable where no fraud was perpetrated by Four Seasons and no Ohio statutes violated by extension of these loans." 465 F.2d at 28, 29.
*235 This court concludes that the strict burden of proof applied by the Tenth Circuit, i. e., "the quantum of evidence required by Oklahoma for imposition of a constructive trust is substantial", was a part of the decision with respect to all issues or questions of fact which were determined by the Tenth Circuit.
Clark contends that the reasons given for the denial of Ohio's reclamation petition preclude on grounds of collateral estoppel the assertion by Ohio of the claims against Clark alleged in the complaint in the instant case. Those eleven claims are listed in note 14, above. They include six claims based on sections of the Federal securities acts, four based on Ohio statutes and one on common law fraud.
Collateral estoppel (as distinguished from the bar of res judicata) operates only to preclude the relitigation of issues or questions of fact actually litigated and determined, not those that merely lurk in the record before the court.[40]
For purposes of collateral estoppel, the following determinations by the Tenth Circuit are controlling:
1. That "the narrow issue presented" was "whether the State of Ohio may properly argue the application of a constructive trust to the funds in question". 465 F.2d at 27.
2. That "[t]he quantum of evidence required by Oklahoma for imposition of a constructive trust is substantial. Mere preponderance of the evidence is not sufficient to establish a constructive trust". p. 28.
3. Applying that test to the evidence, Ohio failed to prove "that the prime rating relied upon by the Ohio State Treasurer in making these loans was obtained through Four Seasons' materially false statements concerning its financial status". p. 28.
4. Applying the same test, Ohio failed to prove noncompliance with Ohio Rev.Code § 135.14 (1967). p. 28.[41]

(3)
The circuits have not always agreed on what must be proved to permit recovery under the sections of the Federal securities acts upon which the first six claims of the complaint in the instant action are based, and the Supreme Court has not yet resolved all those differences.[42]
*236 This court concludes that the law of the transferor forum does not require proof of facts amounting to common law fraud before a plaintiff can recover under one or more of the Federal statutes upon which the first six claims in the complaint in the instant case are based, and under one or more of the Ohio statutes upon which the Seventh, Eighth, Ninth and Tenth claims are based. James v. Gerber Products Company, 483 F.2d 944, 946 (6 Cir. 1973). Tenth Circuit law is similar. Stevens v. Vowell, 343 F.2d 374, 379 (10 Cir. 1965); Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90, 97 (10 Cir. 1971).
This court further concludes that even if proof of fraud is required for recovery under one or more of those statutes, the burden of proof which will be required will probably be less severe than the burden which the Tenth Circuit, applying Oklahoma law, held was necessary to establish a constructive trust. A difference in burden of proof is a factor which should be considered in applying collateral estoppel.[43]
Clark has failed to establish that all of Ohio's claims in the instant *237 case are precluded on grounds of collateral estoppel. He is, therefore, not entitled to summary judgment in his favor dismissing Ohio's entire complaint.[44]

(4)
It is neither necessary nor desirable to decide, on the present motion for summary judgment, (a) what, if any, issue or question of fact which was determined in the denial of Ohio's reclamation petition is a necessary element of the proof of each of the first ten claims asserted in the complaint in the instant case, and (b) whether all or some of those claims can be proved by a preponderance of the evidence or by some other standard less stringent than clear, definite, unequivocal and satisfactory evidence. That decision can best be made at trial when the evidence has been presented and the controlling rules of law have been fully developed before the appropriate court whose duty it is to rule on the merits of the instant action.
Ohio's eleventh claim in the instant case is based on common law fraud. As we have seen, the burden of proof with respect to that claim is the burden of proof which a federal court sitting in Ohio would apply. What the appropriate burden is and, if that burden is less severe than "clear, definite, unequivocal and satisfactory" evidence, the question whether it will have been met can best be determined at the trial.
Therefore, under the general rules of collateral estoppel  issue preclusion, discussed above, Clark's motion for summary judgment should be denied with respect to each claim asserted in the complaint in the instant case, without prejudice to Clark's right at the trial to make any appropriate argument based on the issues or questions of fact determined by the Tenth Circuit in denying Ohio's reclamation petition.

Conclusion
Clark's motion for summary judgment is hereby denied, without prejudice to his right at the trial of this case to *238 make any appropriate collateral estoppel argument based upon the issues or questions of fact determined by the Tenth Circuit in denying Ohio's reclamation petition.
NOTES
[*] Of the District of Maryland, sitting by designation.
[1] The complaint was filed in the United States District Court for the Southern District of Ohio. The Judicial Panel for Multidistrict Litigation transferred the case to this Court for coordinated or consolidated pretrial proceedings. In re Four Seasons Securities Laws Litigation, 361 F.Supp. 636 (July 17, 1973, as amended Aug. 3, 1973).
[2] The several claims are listed under the heading "The Instant Action", below.
[3] See State of Ohio v. Four Seasons Nursing Centers of America, 465 F.2d 25 (10 Cir. Aug. 3, 1972), affirming In re Four Seasons Nursing Centers of America, Inc., Debtor, 329 F.Supp. 647 (W.D.Okl. July 14, 1971). See also In re Four Seasons Nursing Centers of America, Inc., 472 F.2d 747 (10 Cir. Jan. 5, 1973), dealing with an appeal by Charles O. Finley et al. from an order in the Chapter X proceedings approving certain features of the plan of reorganization of the Four Seasons corporations.
[4] Because actions brought by a few plaintiffs who had opted out and a grand jury proceeding were then pending, that historical statement included only facts which appeared to be undisputed, unless the finding was preceded by a reference to the source, e. g., "The SEC report found". See 58 F. R.D. at 21. A few such actions are still pending, as well as the instant action filed by Ohio, and the criminal proceedings have not yet been concluded. The same caution will therefore be observed in this opinion.
[5] Ohio Rev.Code, § 135.14:

"* * * In addition to the investments specified in subparagraphs (A), (B), (C), and (D) of this section, the treasurer of state may invest interim moneys of the state in commercial paper notes issued by any corporation for profit which is incorporated under the laws of the United States, a state, or the District of Columbia, which such notes are rated prime by the National Credit office, Inc., New York, or its successor, provided that the aggregate total amount of interim moneys invested in commercial paper at any time shall not exceed fifty million dollars * * *."
[6] § 206 of Chapter X, 11 U.S.C. § 606, provides:

"§ 606. Persons entitled to hearings
"The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter. The judge may, for cause shown, permit a labor union or employees' association, representative of employees of the debtor, to be heard on the economic soundness of the plan affecting the interests of the employees."
[7] Clark still owned some stock in Four Seasons Equity Corporation. Although the several Chapter X proceedings had been consolidated, it had not yet been decided that there would be a single reorganized corporation, and Four Seasons Nursing Centers of America, Inc., Debtor, was the appellee. Four Seasons Equity Corporation was not a party to the appeal.
[8] In re Four Seasons Securities Laws Litigation, 328 F.Supp. 221 (Jud.Pan.Mult.Lit. 1971), and subsequent orders of the Panel. For a history of those cases, known as M. D.L. Docket No. 55, see Opinion No. 2, Four Seasons Securities Laws Litigation, 58 F.R. D. 19 (W.D.Okl. Dec. 18, 1972), and Opinion No. 4 therein, 59 F.R.D. 667 (June 7, 1973). Clark was also a defendant in S.E.C. v. Crofters, Inc., et al., in the Southern District of Ohio, in which Judge Rubin granted injunctive relief against Clark and others, 351 F.Supp. 236 (S.D.Ohio Aug. 10, 1972).
[9] This feature of the plan is also discussed in the opinion of the Tenth Circuit, 472 F.2d 747, at 748.
[10] Some of those statements are set out or summarized in 58 F.R.D. at 21-25, 27. Some of the statements in the SEC report dealt with the relationship between Four Seasons Nursing Centers of America, Inc., and Four Seasons Equity Corporation.
[11] During a hearing on November 2, 1971, Judge Bohanon had made severely critical remarks about Clark's activities, which Ohio referred to in its briefs herein. Clark had moved to expurgate those remarks, and they were not included in Judge Bohanon's opinion of March 21, 1972. This court has not considered those remarks in its consideration of Clark's motion in the instant case.
[12] Fink et al. also appealed, but dismissed their appeal as part of the compromise settlement of the claims asserted against Clark et al. (1) in the class suits, M.D.L. Docket No. 55, and (2) in the derivative actions filed by the Trustee appointed in the Chapter X proceedings. That settlement, with respect to the M.D.L. 55 cases, was approved by me after a hearing on November 16-17, 1972, and, with respect to the claims asserted by the Trustee, was approved by Judge Eubanks after a hearing in the Chapter X proceedings on November 20, 1972. See 58 F.R.D. at 28, 32 et seq.
[13] At about the same time Ohio filed two other actions in a state court in Ohio, and the SEC filed an injunction suit in the United States District Court for the Southern District of Ohio, arising out of the Ohio loans to Four Seasons. See n. 30, below.
[14] First Claim  § 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

Second Claim  § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5; § 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b).
Third Claim  § 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).
Fourth Claim  § 17(b) of the Securities Act, 15 U.S.C. § 77q(b).
Fifth Claim  § 17(a) of the Securities Act, 15 U.S.C. § 77q(a); § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.
Sixth Claim  § 15(c)(1) of the Exchange Act, 15 U.S.C. § 78o(c)(1), Rule 15c1-2, 17 C.F.R. § 240.15c1-2; § 15(c)(2) of the Exchange Act, 15 U.S.C. § 78o(c)(2).
Seventh Claim  § 1707.44(B)(4), § 1707.43, Ohio Revised Code.
Eighth Claim  § 1707.44(G), § 1707.43, Ohio Revised Code.
Ninth Claim  § 1707.14, § 1707.44(A), and § 1707.43, Ohio Revised Code.
Tenth Claim  § 1707.41, Ohio Revised Code.
Eleventh Claim  Common Law Fraud.
[15] The pendency of that appeal does not divest this court of jurisdiction to entertain the pending motion. The appeal from the order entered pursuant to Opinion No. 4 was not only a final decision on the question raised, but was also certified under 28 U.S. C. § 1292(b). The Tenth Circuit has granted the petitions of Clark et al. for leave to appeal under subsection 1292(b). No stay has been entered. Moreover, such an appeal should not prevent a transferee court from hearing and deciding questions raised in a case transferred by the Panel under 28 U.S.C. § 1407, which will materially advance the coordinated or consolidated discovery and other pretrial proceedings in the several transferred cases.
[16] E. g., Myers v. International Trust Co., 263 U.S. 64, 70-71, 44 S.Ct. 86, 68 L.Ed. 165 (1923); Commissioner v. Sunnen, 333 U.S. 591, 597-598, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Tidewater Oil Co. v. Jackson, 320 F.2d 157, 161 (10 Cir. 1963), cert. den., 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273; Granader v. Public Bank, 417 F.2d 75, 81-82 (6 Cir. 1969); Tipler v. E. I. duPont de Nemours and Co., 443 F.2d 125, 128 (6 Cir. 1971).
[17] There has been a change in the terminology used by many courts, e. g., the word "claim" is now often used where the phrase "cause of action" would have been used in the past.
[18] Chapter 3 (Topic 1) generally, §§ 41-44; (Topic 2) with respect to Personal Judgments, §§ 45-72; (Topic 3) Judgments in Rem, §§ 73, 74; (Topic 4) Judgments Quasi in Rem, §§ 75, 76.
[19] The Reporter's Notes were prepared by Professor Kaplan, now Justice Kaplan of the Supreme Judicial Court of Massachusetts, and Professor Shapiro, of the Harvard Law School. Some of the sections of the New Draft were discussed at the May 1973 meeting of the ALI, but no action was taken which changed any of the sections discussed in this opinion.
[20] See Myers v. International Trust Co., 263 U.S. 64, 73, 44 S.Ct. 86, 68 L.Ed. 165 (1923); Gratiot State Bank v. Johnson, 249 U.S. 246, 248, 39 S.Ct. 263, 63 L.Ed. 587 (1919); Meyer v. Fleming, 327 U.S. 161, 170, 66 S.Ct. 382, 90 L.Ed. 595 (1946); Katchen v. Landy, 382 U.S. 323, 336, 86 S. Ct. 467, 15 L.Ed.2d 391 (1966); United States v. Verrier, 179 F.Supp. 336 (D.Me. 1959); 2 Collier on Bankruptcy (14th ed. 1972), ¶ 18.43; 1 Collier, ¶ 2.09; 1 Remington on Bankruptcy (5th ed. 1953), §§ 20, 420; 50 C.J.S. Judgments §§ 911b, 910c(2); Freeman, Law of Judgments (5th ed. 1925), §§ 1535, 1475-1477; Restatement 2d, Judgments, New Draft, §§ 73, 68.1(d), 74 and Reporter's Notes thereto.
[21] Restatement, Judgments:

"§ 73. Proceedings with Respect to Property.
"(1) In a proceeding in rem with respect to a thing the judgment is conclusive upon all persons as to interests in the thing.
"(2) A judgment in such a proceeding will not bind anyone personally unless the court has jurisdiction over him, and it is not conclusive as to a fact upon which the judgment is based except between persons who have actually litigated the question of the existence of the fact."
"§ 75. Proceedings with Respect to Interests in Property.
"(1) In a proceeding quasi in rem to determine interests in property the judgment is conclusive upon the persons named as defendants as to their interests in the property.
"(2) A judgment in such a proceeding will not bind a defendant personally unless the court has jurisdiction over him, and it is not conclusive as to a fact upon which the judgment is based unless the defendant has actually litigated the question of the existence of the fact."
[22] § 73 of the New Draft reads as follows:

"Judgments Based on Jurisdiction to Determine Interests in Things
"A valid and final judgment in an action based only on jurisdiction to determine interests in a thing:
"(a) Is conclusive as to those interests with regard to all persons, if the judgment purports to have that effect (traditionally described as `in rem'), or with regard to the named parties, if the judgment purports to have that effect (traditionally described as `quasi in rem'); and
"(b) Does not bind anyone with respect to a personal liability; and
"(c) Is conclusive between parties, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action.
"Cross-references: The rules of issue preclusion are set forth in Topic 2, Title E, §§ 68, 68.1."
[23] The term "res judicata" will be used in the sense of an absolute bar to a subsequent action by one party against another on the same claim, as distinguished from "issue preclusion"  the effect of the determination of an issue in another action between the parties on the same claim ("direct estoppel") or a different claim ("collateral estoppel").
[24] See also Walley v. United States, 259 F. 2d 579 (9 Cir. 1958), where the court said, inter alia, at p. 582: "Although a judgment may be conclusive against one who has litigated his interest in an asset, the judgment rendered can only determine his right to and in the asset and cannot from this restricted area blossom out into a personal judgment."
[25] In attachment or garnishment proceedings, brought by a creditor in a court of general jurisdiction, the alleged debtor may often appear generally and give the court in personam jurisdiction over him so that a judgment for or against him may be entered which will have in personam res judicata effect. Ohio's reclamation petition, filed in a proceeding for reorganization under Chapter X of the Bankruptcy Act, is not such a proceeding. The bankruptcy court had no jurisdiction to enter an in personam judgment for or against Clark.
[26] § 206 is set out in full in note 6, above. § 207, 11 U.S.C. § 607, provides: "The judge may for cause shown permit a party in interest to intervene generally or with respect to any specified matter. Except where otherwise provided in this chapter, the judge may from time to time enter orders designating the matters in respect to which, the persons to whom, and the form and manner in which notice shall be given." No request under § 607 was made and no order permitting such intervention was entered. Moreover, such intervention would not have permitted an in personam judgment for or against Clark to have been rendered.
[27] The reasons for such participation are set out under the heading "Clark's Participation in Opposition to Ohio's Petition", above.
[28] "§ 79. Parties  General Rule.

"A person who at the time of the rendition of a valid judgment is a party to the action is bound by and entitled to the benefits of the rules of res judicata, except as stated in §§ 80-82."
§§ 80-82 are not important in this case.
[29] Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), relied on by Clark, is not to the contrary. In that case the subject of the readjustment proceeding had been the future obligations of the drainage district and the future rights of the bondholders with respect to the very bonds on which the plaintiffs were attempting to collect. The res in the Four Seasons reorganization proceedings was the cash and other assets of the debtor; the decision on Ohio's reclamation petition was that Ohio had not proved that it was entitled to a constructive trust on the res, the property of the debtor. 465 F.2d at 28. That judgment would bar any further effort by Ohio to reclaim any part of the res on the same or any other theory. Ohio's present suit, however, is not against Four Seasons or the reorganized corporation. The bankruptcy court had no jurisdiction to impose or deny any personal liability on the part of Clark.
[30] The decision on this point makes it unnecessary for the court to consider as an alternative reason for refusing to apply the absolute bar of res judicata in this case the considerations discussed briefly in Restatement § 62(a) and Comment k thereto, and much more fully in the Reporter's Note to § 61.2 of the New Draft, particularly the portion of the Note on p. 140 et seq., dealing with Comment c(1) to § 61.2(1)(c). In addition to the cases cited therein, see Moran v. Paine, Webber, Jackson & Curtis, 279 F. Supp. 573, 577, 578 (W.D.Pa.1967), aff'd, 389 F.2d 242 (3 Cir. 1968).

Ohio calls attention to the fact that Clark has thrice raised unsuccessfully claims of res judicata and collateral estoppel in other cases arising out of the Ohio loans, namely:
(1) SEC v. Crofters, Inc., Clark et al., an action for an injunction brought by the SEC. 351 F.Supp. 236 (S.D.Ohio Aug. 10, 1972);
(2) Shaul v. Crofters, Inc., Clark et al., an action filed by the Director of Commerce of the State of Ohio in the Court of Common Pleas, Franklin County, Ohio, against many of the defendants in the instant case.
(3) Ohio v. Herbert et al., also in the Court of Common Pleas of Franklin County, Ohio, wherein Herbert, the State Treasurer, and certain surety companies filed third-party complaints against Clark et al., seeking indemnification for any amount they might be called upon to pay to the State on account of the Four Seasons note transactions.
The SEC injunction case presented a different problem. See 351 F.Supp. at 259-261. The other two were not final adjudications and therefore not decisions to which this court must give full faith and credit; the record and briefs before this court on the pending motion do not show the reasons for those decisions, so this court cannot tell what weight might be given to them.
[31] "§ 68. Questions of Fact.

"(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in §§ 69, 71 and 72.
"(2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action."
[32] The language in § 75, dealing with judgments quasi in rem, is essentially similar.
[33] Clark has cited § 84 of the Restatement, which reads:

"§ 84. Persons Who Participate But Are Not Parties.
"A person who is not a party but who controls an action, individually or in co-operation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound."
That rule applies to personal judgments. See Comment b to § 84. Since the denial of Ohio's reclamation petition was not a personal judgment, that section does not apply. Even if it did, the result with respect to collateral estoppel would be the same. Both Clark and Ohio would be bound by the adjudication of litigated matters.
[34] "§ 68.1. Exceptions to the General Rule of Issue Preclusion.

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
"* * *
"(c) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
"(d) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
"(e) There is a clear and convincing need for a new determination of the issue (i) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, * * * or (iii) because the party sought to be concluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."
[35] Among the formulations used by the Supreme Court, the Sixth Circuit and the Tenth Circuit are: "matters in issue or points controverted, upon the determination of which the finding or verdict was rendered", Cromwell v. County of Sac, 94 U.S. 351, 353 (1876); "a right, question or fact distinctly put in issue, and directly determined", Southern Pacific Railroad v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355 (1897); "issue of fact", Myers v. International Trust Co., 263 U.S. 64, 75, 44 S.Ct. 86, 68 L.Ed. 165 (1923); "points at issue", Commissioner v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1948); "what is judicially determined", Katchen v. Landy, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); "any right, fact or matter in issue and directly adjudicated, or necessarily involved in the determination of an action", Henderson v. United States Radiator Corp., 78 F.2d 674, 675 (10 Cir. 1935); "common issues, claims or defenses which were actually litigated and determined in the first action", Security Insurance Co. v. Johnson, 276 F.2d 182, 187 (10 Cir. 1960); "findings of fact", Granader v. Public Bank, 417 F.2d 75, 81 (6 Cir. 1969). See also Tipler v. E. I. duPont de Nemours and Co., 443 F.2d 125, 128, (6 Cir. 1971), quoting and applying 1B Moore's Federal Practice, ¶ 0.441 [2], at 3777.
[36] See also The Evergreens v. Nunan, 141 F.2d 927 (2 Cir. 1944), cert. den., 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579; Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).
[37] See Cities Service Co. v. S.E.C., 257 F.2d 926, 930 (3 Cir. 1958).
[38] See Restatement, Second, Conflict of Laws, § 95; In re Potts, 142 F.2d 883 (6 Cir. 1944), cert. den., 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423; Chesapeake Industries, Inc. v. Wetzel, 265 F.2d 881 (6 Cir. 1959); United States v. Silliman, 167 F.2d 607 (3 Cir. 1948), cert. den., 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379.
[39] "We likewise reject appellant's argument that the prime rating relied upon by the Ohio State Treasurer in making these loans was obtained through Four Seasons' materially false statements concerning its financial status. The trial court found no fraud or misrepresentation after an evaluation of the testimony presented before it in a full hearing. We hold this decision to be adequately supported by the record; there is no cogent reason to reverse the trial court on this point. Accordingly, we affirm the finding of no fraud or misrepresentation in obtaining the rating of prime from the National Credit Office.

"We are unconvinced by appellant's remaining arguments that a constructive trust is applicable to the funds in question. The quantum of evidence required by Oklahoma for imposition of a constructive trust is substantial. Mere preponderance of the evidence is not sufficient to establish a constructive trust. Rather, it must be established by evidence which is clear, definite, unequivocal and satisfactory. The evidence must lead to but one conclusion, or leave no reasonable doubt as to the existence of the constructive trust. The evidence presented by appellant in the trial court does not rise to the quantum required by Oklahoma." 465 F.2d at 28.
[40] See Mancuso v. United States, 464 F.2d 1273, 1275 (10 Cir. 1972); Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925); NLRB v. Clark Bros. Co., 163 F.2d 373, 376 (2 Cir. 1947).
[41] § 135.14 was the only Ohio statute referred to in the paragraph of the opinion dealing with the Ohio law. It was the only Ohio statute relied on by Ohio in its brief. The only other Ohio statute cited, § 149.43 Ohio Rev.Code, dealt with the availability of public records, and was not the basis of any claim. The first sentence of the paragraph in the opinion dealing with Ohio law  "We conclude there was no illegality surrounding the procurement of these funds."  dealt with § 135.14, and not with the sections of the Ohio Code upon which the Seventh, Eighth, Ninth and Tenth claims in the complaint in the instant case are based.
[42] See, e. g., Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Britt v. Cyril Bath Company, 417 F.2d 433 (6 Cir. 1969); Mader v. Armel, 402 F.2d 158 (6 Cir. 1968), cert. den., 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459, 409 U.S. 1023, 93 S.Ct. 465, 34 L.Ed.2d 315; James v. Gerber Products Company, 483 F. 2d 944, 946 (6 Cir. 1973); Gilbert v. Nixon, 429 F.2d 348 (10 Cir. 1970); Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90 (10 Cir. 1971), cert. den., 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558; Heit v. Weitzen, 402 F.2d 909 (2 Cir. 1968), cert. den., 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217; Shemtob v. Shearson, Hammill & Co., 448 F.2d 442 (2 Cir. 1971); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341 (2 Cir. 1973); Kahan v. Rosenstiel, 424 F.2d 161 (3 Cir. 1970), cert. den. sub. nom., Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290; Gottlieb v. Sandia American Corporation, 452 F.2d 510 (3 Cir. 1971); Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9 Cir. 1962); Ellis v. Carter, 291 F.2d 270 (9 Cir. 1961).
[43] § 68.1 of the New Draft reads, in pertinent part, as follows:

"Exceptions to the General Rule of Issue Preclusion.
"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
"* * *
"(d) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; * * *"
The Reporter's Note to this subsection is as follows:
"Clause (d) deals with a matter not discussed in the first Restatement. While one decision has been found to the effect that a shift in the burden of proof is irrelevant to the application of issue preclusion, Harding v. Carr, 79 R.I. 32, 83 A.2d 79 (1951), the reasoning of the dissent in the case is believed to be more persuasive. Furthermore, there are decisions lending support to the position that preclusive effect should not be given to the first determination when the party sought to be concluded had a heavier burden (or his adversary had a lighter burden) in the first proceeding than in the second. See e. g., One Lot Emerald Cut Stones v. United States, 93 S.Ct. 489, 492, (1972) (effect of criminal acquittal in subsequent civil forfeiture proceeding) (alternative ground); Helvering v. Mitchell, 303 U.S. 391 (1938) (effect of criminal acquittal in subsequent civil action); Young & Co. v. Shea, 397 F.2d 185, 188-89 (5th Cir. 1968) (one of several grounds); Harper v. Blasi, 112 Colo. 518, 151 P.2d 760 (1944) (effect of criminal acquittal in subsequent civil action); cf. Yates v. United States, 354 U.S. 298, 336 (1957); Township of Washington v. Gould, 39 N.J. 527, 189 A.2d 697 (1963); Hazard, Res Nova in Res Judicata, 44 So.Cal.L.Rev. 1036, 1044 (1971). But cf. Coffey v. United States, 116 U.S. 436 (1886)."
See also Stone v. United States, 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127 (1897); Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446 (1926); Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Strachan Shipping Company v. Shea, 406 F.2d 521 (5 Cir. 1969), cert. den., 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 238; Neaderland v. CIR, 424 F.2d 639 (2 Cir. 1970), cert. den., 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56, and cases cited therein.
Clark argues that Ohio deliberately chose to assert its claim for reclamation in the Chapter X proceedings, and cannot now complain of the burden of proof imposed on it therein. Ohio properly calls attention to the order entered by the bankruptcy court in the Chapter X proceedings, barring any action which would interfere with the exclusive jurisdiction of the bankruptcy court over the property of the debtor. That order prevented Ohio from instituting any other proceeding in which it might have sought both (1) rescission of the loan and reclamation of the money, and (2) in personam relief against the several persons, in Ohio and elsewhere, alleged to have participated in the claimed fraud or in the violation of the several statutes. If any such action could have been maintained, the burden of proof with respect to the establishment of a constructive trust would still have been more onerous than the burden of proof with respect to some or all of the claims asserted by Ohio in the instant case. It does not appear that any of the theoretically possible actions suggested by Clark were at all practicable.
[44] Ohio has argued that this court should consider the following facts: (a) that the report of the SEC was not filed in the Chapter X proceedings until after the denial by the district court of Ohio's reclamation petition; (b) that after that report was filed, the district judge, in ruling on the proposed settlement (after hearings in which Clark participated), found: "There is a strong probability that fraud and other violations of the Federal Securities Acts have occurred, for which the debtor estates would be liable to the Class `G' claimants", and the Tenth Circuit concluded that "the Class G claimants were in fact and in law creditors" and affirmed the decision of the district court, 472 F.2d at 750.

In Tipler v. E. I. duPont de Nemours and Co., 443 F.2d 125, 128 (6 Cir. 1971), the Sixth Circuit said: "Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice. * * *" The court cited 1B Moore's Federal Practice ¶ 0.405 [12], at 791, which states: "Just as res judicata is occasionally qualified by an overriding, competing principle of public policy, so occasionally it needs an equitable tempering. The equity of the rule requires an appropriate equity of application." § 68.1(c) and (e) of the New Draft quoted in note 34, above, also indicates that weight may be given to such facts.
In view of the decision herein, however, it is not necessary at this time to consider those factors.
Ohio also calls attention to the following facts: An indictment against Clark and others was filed in the Southern District of New York on December 20, 1972, after Ohio's reclamation petition had been denied, after the rights of the Class G creditors in the Chapter X proceedings had been decided in the district court, and after the settlement of the class actions had been approved; and on June 4, 1973, Clark plead guilty to one count of conspiracy. That plea has been cited by Ohio as an additional equitable reason for not applying collateral estoppel in this case. Clark has moved that all reference to the indictment and plea be stricken. The judge who took the plea and sentenced Clark allowed him to qualify his plea by a statement admitting no guilt before mid-April 1970. Under all the circumstances this court concludes that it should not give any weight to that indictment or plea in deciding the pending motion.