In the Matter of **FOUR SEASONS NURS-
ING CENTERS OF AMERICA, INC.,**
Debtor, as relating to Four Seasons
Overseas, N. V., et al., and Four Seasons
Equity Corporation, as relating to FSN
Corporation, a subsidiary to the orig-
inal debtor, and Charles O. Finley et
al., Protestant-Shareholders of Four Sea-
sons Nursing Centers of America, Inc.,
to Trustee's Plan of Reorganization.

No. 72–1664.

United States Court of Appeals,
Tenth Circuit.

Jan. 5, 1973.

R. C. Jopling, Jr., Oklahoma City,
Okl., for Charles O. Finley and others,
appellants.

Robert C. Bailey, Oklahoma City, Okl.,
for appellees.

Paul Gonson, Asst. Gen. Counsel, S. E.
C. (David Ferber, Sol., Grant G. Guth-
rie, Special Counsel, and Michael A.
Macchiaroli, Atty., S. E. C., on the
brief), for Securities and Exchange Com-
mission, appellee.

Before LEWIS, Chief Judge, and
BREITENSTEIN and DOYLE, Circuit
Judges.

WILLIAM E. DOYLE, Circuit Judge.

The cause before us involves appeals
from orders entered by the district court
in connection with Chapter X of the
Bankruptcy Act. The debtor corpora-
tion is Four Seasons Nursing Centers of
America, Inc., a corporation which was
engaged in the development, construc-
tion and management of nursing centers
throughout the United States.

We are concerned in this matter with a limited aspect of the reorganization proceedings. The appeal here is prosecuted on behalf of one group of protestant shareholders of the Four Seasons corporation, a group which acquired their shares subsequent to July 22, 1970, subsequent to the filing of the voluntary petition for reorganization under Chapter X by Four Seasons. Four Seasons had had outstanding 3,445,651 shares of common stock which, prior to these proceedings, had been listed on the American Stock Exchange. Trading in this stock was suspended by this Exchange on April 30, 1970. Thereupon, an active over-the-counter market developed which in turn was suspended by the Securities and Exchange Commission on May 13, 1970. In its order the Commission stated that its suspension would terminate on July 24, 1970. By this time the Chapter X petitions of Four Seasons and its affiliate Equity had been filed.

On July 21, 1970, the Commission issued a press release in which it called attention to the severe financial difficulties of Four Seasons and cautioned prospective purchasers of the stock concerning trading in these securities. In the interim period a number of class actions had been filed by holders of securities of Four Seasons which had been acquired prior to the Chapter X filings. In these actions damages were sought under the anti-fraud provisions of the Securities Act of 1933 and the Securities and Exchange Act of 1934. Various allegations appeared in the several complaints as to use of deceptive methods and means in the sale of the securities. The numerous suits were consolidated for pretrial proceedings by the Panel on Multidistrict Litigation. These actions became claims in the reorganization proceedings.

The embattled plan recognized merit in the claims of the purchasers of shares prior to July 22, 1970. These were all designated as Class G creditor-stockholders and provision was made for these shareholders to receive shares in the re-organized corporation. This recognition was based on a compromise settlement approved by the designated multidistrict judge. A hearing was held before the reorganization court which determined that there was underlying merit in these claims in that the Class G claimants would likely be successful in plenary actions. The court ruled that the compromise of the claims was fair and equitable. The result of the acceptance of the proposed plan including the recognition of claims of the Class G group of claimants resulted in exhausting all of the assets of the reorganized company so that there was nothing left for the Class E shareholder claimants, those who purchased subsequent to July 22, 1970. The Class G shareholder-claimants received one-third of the equity of the reorganized company having a value of about 11.4 million dollars. This was in satisfaction of claims which exceeded 100 million dollars. Two-thirds of the equity of the reorganized company went to unsecured creditors. The approximate value of this was 22.8 million dollars.

In seeking a reversal the protestant shareholders contend, *first*, that the plan is invalid because it liquidates their equity without a judicial determination of insolvency of the debtor estate and, *secondly*, it is said that the plan erroneously assumes the validity of the unlitigated claims of the Class G claimants. It is urged that the Class G creditor-stockholders are not properly to be considered as creditors; that they are to be regarded as just another class of shareholders and treated as such; that there is no justifiable basis for distinguishing between Class G and Class E shareholders.

The issues presented to us thus become relatively simple. The first question is whether the classification which the reorganization court made was valid on its face even though it preempted all of the assets, after the unsecured creditors had been dealt with, for the benefit of the shareholders who had in the multiplicity of lawsuits claimed that fraud

had been practiced in the sale of their shares, thereby treating them as creditor-claimants rather than as mere shareholders.

The second question boils down to the simple inquiry whether the reorganization court abused its discretion in the formulation and approval of the plan, one which effectively wiped out the equity of the present protestants. Was the equity of this class of shareholders sufficiently substantial so that the court's refusal to give recognition to it constituted manifest error?

■ The question as to whether the plan is unfair and inequitable as a matter of law because of its exclusion from participation of the Class E shareholders is unique in that there is no previous decision dealing with the equity and fairness of a plan which absorbs all of the assets so as to render the reorganized company insolvent and unable to allow participation by an entire class of shareholders. Though there is a dearth of specific governing law, we conclude that the trial court's order and judgment is fair and equitable and must be upheld. The reorganization court as a court of equity has broad powers in the matter of classifying creditors and shareholders, and it necessarily has full power to subordinate interests or classes of interests where the equities demand. See 6A Collier on Bankruptcy ¶ 9.15 at 259–61 (14th ed.).[1]

It cannot be said that the classification here is invalid per se. We do not have a fact situation like that in Case v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). There the Supreme Court invalidated a plan which had subordinated rights of creditors to the rights of shareholders. The fact that the plan had been approved by the vast majority of the security holders was immaterial. The decision points up the fact that the reorganization court does not have an uncontrolled discretion in classifying and subordinating, but must give effect to fundamental equities.

■ The trial court's decision at bar, the effect of which was to give to the Class G group the standing of claimant-creditors, was made only after a very careful consideration of the underlying evidence. The court determined that there was merit in their contentions that they had been defrauded in the purchase of their shares so that there was a reasonable likelihood that they would have succeeded in litigation. All of this was a basis for the court's approval of the compromise settlement which resulted in their being issued shares in the reorganized company. It cannot, of course, be said that the Class G individuals did not satisfy the definition of "creditor" and of "claim" under §§ 106(1) and 106(4). The definition of a "claim" under the former provision includes all claims

---

1. The author's further comment on the reorganization court's power of subordination reads as follows:

The most common uses of subordination are to nullify the effect of any fraud that a creditor has committed, to prevent unjust enrichment from or redress a wrong arising out of a fiduciary relation, and to make the transactions of officers with a debtor corporation and between parent and subsidiary corporations conform to the realities of the situation before the court. Subordination is a means of regulating distribution results in reorganization by adjusting the respective order of claimants and stockholders to the equitable levels of their comparative claim positions in the proceeding. Its fundamental aim is to undo or offset any inequity in the position of a creditor or stockholder which will produce injustice or unfairness to the other creditors or stockholders in terms of reorganization results. It has been said, however, that the power of subordination must be measuredly exercised with a sound regard for the results which will be produced; and that where there is an attempt to adjust the equities between claims or interests of different classes, any subordination of the higher legal right must be carefully determined and fitted to the actual injury done or the unjust enrichment involved.

whether secured or unsecured, liquidated or unliquidated, fixed or contingent.[2]

Based then on our conclusion that the Class G claimants were in fact and in law creditors and that their status as shareholders was incidental in the present context, it was certainly proper for the court to determine that they were entitled to be recognized in the reorganization plan.

■ There is no merit to the further contention of the protestants that their particular equities require that they be recognized also, for it is clear that there was a vast difference between the Class G claimants and the Class E protestants. The latter acquired their stock in over-the-counter trading after the Chapter X proceedings had been instituted. Necessarily they had full knowledge of the hazards involved and their purchase of shares was motivated by opportunism. But they introduced no fresh money and did not directly or indirectly contribute substance to either the debtor corporation or the reorganized corporation. *Compare* Case v. Los Angeles Lumber Products Co., Ltd., *supra.*

Protestants' further argument that they purchased the stock of aggrieved shareholders who, had it not been for the purchases, would have been Class G claimants, is not persuasive. This contribution was indirect and remote and did not merit recognition. Nor are we able to see that the action of the SEC in allowing trading in the shares after the commencement of the reorganization proceedings serves to provide any basis for a claim. Accordingly, we are unable to see that the protestants have any countervailing equities justifying their inclusion.

The order and judgment of the district court approving the plan pertaining to the Class E shareholders should be and it is hereby affirmed.

---

2.  Needless to say, the Class E shareholders had no semblance of an economic claim against the debtor or its property. *See* In re Associated Gas & Elec. Co., 149 F.

2d 996, 1009 (2d Cir.), cert. denied, Elias v. Clarke, 326 U.S. 736, 66 S.Ct. 45, 90 L.Ed. 439 (1945).