535 F.2d 1388
 In the Matter of CARTRIDGE TELEVISION, INC., Bankrupt.
Eddie L. THOMPSON, Jr., et al., Appellants,
v.
Stanley TULCHIN, as Trustee-in-Bankruptcy of Cartridge
Television, Inc., Appellee.
 No. 748, Docket 75-5019.
 United States Court of Appeals,
Second Circuit.
 Argued April 7, 1976.
Decided June 9, 1976.
 
 I. Walton Bader, New York City (Bader & Bader, New York City, of counsel), for appellants.
 M. David Graubard, New York City (Conrad B. Duberstein, Otterbourg, Steindler Houston & Rosen, P.C., New York City, of counsel), for appellee.
 Before FRIENDLY, MANSFIELD and MULLIGAN, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 This appeal raises the question of whether the disallowance pursuant to § 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d), of a contingent and unliquidated damage claim against a corporate bankrupt, which alleges stock fraud and violation of federal securities laws, constitutes an abuse of the statutory power vested in the bankruptcy court or a violation of the Due Process Clause of the Fifth Amendment. On June 3, 1975, Bankruptcy Judge Asa Herzog applied the statute to a corporate bankruptcy and disallowed appellants' claims. His order was affirmed by Judge Kevin T. Duffy of the Southern District of New York.
 
 
 2
 After an abortive attempt to effectuate a Chapter XI arrangement, the debtor-appellee, Cartridge Television, Inc., entered into straight bankruptcy. Appellants, who are stockholders of the bankrupt, filed claims in the bankruptcy proceeding on behalf of themselves and purportedly on behalf of classes of similarly situated stockholders, alleging (as they had in two class actions filed in the Southern District of New York against Cartridge Television while it was in Chapter XI proceedings[1]) fraud and violation of federal securities laws on the part of Cartridge Television, including the issuance of a false prospectus and the filing of false and misleading reports to the Securities and Exchange Commission. Unliquidated damages approximated at $60 million were claimed ($20 million on behalf of one group and $40 million on behalf of another). The liquidation of the bankrupt's assets has resulted in an estate of close to $800,000, against which there are approximately 600 provable, liquidated claims of general unsecured creditors which aggregate about $3 million.
 
 
 3
 Bankruptcy Judge Herzog, recognizing that if appellants' claims were treated as tort claims they would not fall within any category of provable debts or claims under § 63 of the Bankruptcy Act, 11 U.S.C. § 103, assumed arguendo that they might be provable as implied contract claims under § 63(a)(4) of the Act. He then proceeded to disallow and expunge the claims, holding that, to the extent that each claim purported to represent a class, no authority existed under the Act or rules thereunder for the filing of class claims. Appellants' individual claims were expunged under § 57(d) because the "ultimate disposition is so distant that I must find that liquidation of the claims would . . . unreasonably delay the administration of this estate. . . ."
 
 
 4
 The claimants appeal from Judge Duffy's order affirming that of the bankruptcy court. Since the class action status of both stock fraud claims has since been stricken by the district court,[2] Judge Herzog's class claim ruling is mooted and hence warrants no discussion.
 
 DISCUSSION
 
 5
 Section 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d) provides:
 
 
 6
 "Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: Provided, however, That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title."
 
 
 7
 This section must be coupled with § 63(d) of the Act, 11 U.S.C. § 103(d), which provides that any claim disallowed under § 57(d) "shall not be deemed provable under this title." Relying upon these sections as the authority for his disallowance of appellants' claims of securities law violations, the bankruptcy judge found that they constitute "unliquidated or contingent" claims not "capable of liquidation or of reasonable estimation" and that efforts to liquidate or estimate them would "unduly delay the administration of the estate . . .."
 
 
 8
 Appellants do not take issue with the factual bases of the bankruptcy court's reasoning and indeed they could not. There can be no dispute that their stock fraud claims are both contingent and unliquidated, that the trustee vigorously contests their allegations, and that the litigation, which involves complex issues of fact and law, will probably not be concluded for several years. Moreover, the trustee advises us that no more than five objections to the other claims remain pending, that the bankrupt's assets have all been liquidated, and that therefore the $800,000 estate will shortly be ready for distribution to some 600 creditors who have filed provable and liquidated claims of approximately $3 million. Appellants, however, urge us to look beyond these facts and instead to adopt two general principles of law as rationales for disregarding § 57(d) in a corporate context.
 
 
 9
 First, apparently as a matter of statutory interpretation, appellants contend that § 57(d) was designed for individual bankruptcies or corporate reorganization proceedings rather than for corporate bankruptcies and that "(w)hile a Bankruptcy Judge has discretion under section 57(d) . . . to expunge claims, . . . the exercise of such discretion is an abuse of discretion where a corporate bankrupt is involved." They argue that, although the corporate debtor's contingent, unliquidated obligations will not be discharged, it will, after distribution of its assets to the other creditors, become a mere shell, thus precluding appellants from any recovery upon their claims against it. Since survival of the empty, asset-less corporation, unlike that of an individual debtor, offers no hope that claimants may ever be able to collect their claims against the debtor, they urge that it is an abuse of discretion to refuse to postpone distribution until their claims are adjudicated. We disagree.
 
 
 10
 The Bankruptcy Act itself offers no support for appellants' position. On the contrary, the plain language of § 57(d)'s proviso draws no distinction between corporate and individual bankrupts. Nor have appellants referred us to any passage in the legislative history suggesting that corporate bankrupts were to be excluded from its reach. Indeed to do so would run counter to the purpose of the Act, which is to promote the prompt liquidation of each debtor's estate and the expeditious distribution of the proceeds to the bona fide general creditors holding provable claims so that they will not be forced to wait unduly long for payments due them. Furthermore, the contingent claimants here are not, and may never become, creditors of the corporate debtor. At this stage they remain stockholders. To permit them to delay the normal winding up of a corporate bankrupt's estate would be to undercut the utility of the bankruptcy laws where corporate debtors are involved. "Not many doctrines have passed more fully into the collective consciousness of the legal and commercial communities than the absolute priority rule, which states this prohibition: in bankruptcy, stockholders seeking to recover their investments cannot be paid before provable creditor claims have been satisfied in full." Slain & Kripke, The Interface between Securities Regulation and Bankruptcy Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors, 48 N.Y.U.L.Rev. 261 (1973). By making contingent and unliquidated securities fraud claims both provable and nonexpungable, appellants' position would weaken severely the priority position of the general creditors. Shareholders who simply alleged securities law violations that were not patently frivolous could threaten substantial delay in the administration of a corporate bankrupt's estate. Given the often protracted nature of securities litigation, it is not difficult to foresee trustees being forced to settle contingent claims of highly questionable merit in order to avoid unnecessary delays in distribution.
 
 
 11
 Of course the bankruptcy judge cannot exercise unbridled authority in the disallowance of a stockholder's claim of fraud. In re Four Seasons Nursing Centers of America, Inc., 472 F.2d 747 (10th Cir. 1973) (Chapter X proceeding); In re William Rakestraw Co., 450 F.2d 6, 9 (9th Cir. 1971). To reject an easily provable securities fraud claim, for instance, might well amount to an abuse of discretion. On the other hand, the court should not be powerless to act. The Act plainly contemplates that the bankruptcy judge must exercise reasonable discretion in utilizing § 57(d) and on the facts of this case we are satisfied that appellant cannot even remotely demonstrate an abuse of discretion on Judge Herzog's part in finding appellants' securities fraud claims to be too contingent and remote to be allowable.
 
 
 12
 Appellants' second line of reasoning is that a construction of § 57(d) permitting a bankruptcy judge to expunge contingent claims against a corporate bankrupt cannot be squared with the Due Process Clause of the Fifth Amendment. Since a liquidating corporation usually ends up as an asset-less shell and the allegedly defrauded shareholders would be left completely unpaid if their claims were disregarded, they argue that to deny relief in bankruptcy is to deny Due Process protection.
 
 
 13
 The simple answer is that if Congress were constitutionally disabled from prohibiting or limiting proof of contingent and unliquidated claims against a corporate debtor in bankruptcy, Congress would be unduly hampered, if not frustrated, in its efforts to exercise the power expressly granted it by Article I, § 8 of the Constitution to establish laws governing bankruptcies. The necessity of providing, as a means of facilitating the prompt distribution of bankrupt estates, that certain types of claims may not be proved has long been recognized. As an obvious example, most tort claims remain non-provable against both corporate and personal bankrupts, § 63(a)(7), 11 U.S.C. § 103(a) (7); see Reading Co. v. Brown, 391 U.S. 471, 480, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968); Joslin, Torts & Bankruptcy A Synthesis, 1 B.C. Ind. & Com.L.Rev. 185, 195 (1960); Note, Tort Claims and the Bankrupt Corporation, 78 Yale L.J. 475, 476-77 (1969), despite the fact that no other avenue of recovery may be available to the victim. Similarly, even where a corporate debtor is involved, courts have disallowed claims for future rent, Manhattan Properties Inc. v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824 (1934), and for future amortization payments, Shultz v. Irving Trust Co., 74 F.2d 121 (2d Cir. 1934), even though, as here, the hopeful creditor "must look solely for redress . . . to a corporate debtor whom bankruptcy has stripped of all assets." 291 U.S. at 332, 54 S.Ct. at 387. Although the Bankruptcy Act has undergone major changes in this area since 1934, see, e. g., 3A Collier on Bankruptcy P 63.32(4), at 1929 (14th ed. 1975), the underlying principle of these cases still applies: "The issue is not one of power, for plainly Congress may permit such claims or exclude them." 291 U.S. at 332, 54 S.Ct. at 387.
 
 
 14
 Congress possesses this power because the Due Process Clause affords a more modest constraint on legislative decision-making in the economic domain than appellants apparently recognize. Ordinarily, as long as the legislature's economic policies fall within the scope of its constitutional authority, foster no invidious discrimination, infringe no independent constitutionally protected interest, and reasonably serve legitimate legislative purposes, the substantive requirements of Due Process are satisfied. For this reason, courts traditionally have deferred to the legislature's economic policies when questions of regulatory activity, Miller v. Schoene, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928), taxation, Pittsburgh v. Alco Parking Co., 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974), zoning, Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Goldblatt v. Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), and retroactive legislation, Welch v. Henry, 305 U.S. 134, 146-47, 59 S.Ct. 121, 83 L.Ed. 87 (1938), are involved, even though the property interests of parties may be interfered with or injured by the resulting law.
 
 
 15
 We see no reason to depart from this established doctrine in this instance. Congress' authority to create bankruptcy policy is firmly rooted in Article 1, § 8 of the Constitution. The proviso of § 57(d) with which we are here concerned has been in effect since 1938. Even prior to that date the Supreme Court upheld Congress' power to disallow certain claims as non-provable against a corporate debtor. See Manhattan Properties, Inc., supra. Thus for many years one doing business with a corporation has been put on notice of the possibility that, in the event of the corporation's bankruptcy, a contingent and unliquidated claim might be disallowed. Section 57(d), furthermore, does not single out any particular group to suffer adverse treatment, and the statute reasonably serves to effectuate a "paramount objective of bankruptcy proceedings, that of expeditious administration," 3 Collier on Bankruptcy, supra, P 57.15, at 247.
 
 
 16
 The district court's order is affirmed.
 
 
 
 [1]
 In subsequent proceedings the United States District Court, Southern District of New York, Judge Marvin E. Frankel, struck the class action allegations of plaintiffs' complaints. At this time only Eddie Thompson, Jr. remains as appellant since the other named plaintiffs have withdrawn from the lawsuit
 
 
 [2]
 See note 1 supra