AMERICAN EMPLOYERS' INSURANCE COMPANY, Plaintiff-Appellee,

v.

KING RESOURCES COMPANY et al., Defendants-Appellees,

John M. King, Defendant-Appellant.

No. 76–1132.

United States Court of Appeals, Tenth Circuit.

Submitted March 14, 1977.

Decided May 25, 1977.

John M. King filed a pro se brief.

John S. Pfeiffer and Robert J. Kapelke, Denver, Colo., for Charles A. Baer, Trustee, King Resources Co., appellee.

William A. Cotter, Jr., Boston, Mass., John F. Shafroth, Denver, Colo., Mary Morrissey Sullivan, Boston, Mass., for American Emp. Ins. Co., appellee; Parker, Coulter, Daley & White, Boston, Mass., and Shafroth & Toll, Denver, Colo., of counsel.

Winston J. Churchill, Philadelphia, Pa., George W. Hopper, Alan W. Peryam, Denver, Colo., John C. S. Kepner, Philadelphia, Pa., for The Dietrich Corporation, et al., Class Representatives, appellees; Saul, Ewing, Remick & Saul, Philadelphia, Pa., and Hopper & Kanouff, Denver, Colo., of counsel.

Donald M. Haskell, Robert F. Klimek, Daniel J. Pope, for Timothy G. Lowry; Haskell & Perrin, Chicago, Ill., of counsel.

John J. McLario, McLario & Bernoski, Menomonee Falls, Wis., for Ella G. Barge.

Katherine Tamblyn of Fedder & Morris, Denver, Colo., for William V. Coffey, appellee.

John E. Hoffman, Jr., of Shearman & Sterling, New York City, Thomas J. Kerwin of Hindry & Meyer, Denver, Colo., for Citibank, N.A., indenture trustee.

Glen H. Kanwit of Hopkins, Sutter, Mulroy, Davis & Cromartie, Chicago, Ill., for Robert E. Booker.

William B. Murray, Portland, Or., for Leonard M. Gross and Helen Gross and for Joseph N. Morell and Angela Morell, appellees.

Robert L. Shanstrom, Thomas S. Nichols of Davis, Graham & Stubbs, Denver, Colo., for United Bank of Denver, indenture trustee.

Before SETH, BARRETT, Circuit Judges, and KERR, Senior District Judge.[*]

BARRETT, Circuit Judge.

John M. King (King) appeals *pro se* from an Order entered by the District Court arising from an action commenced April 6, 1972, by American Employers' Insurance Co. (American) rescinding a policy of liability insurance issued to King Resources Company covering certain acts of commission and/or omission of the insured's directors and officers on the ground that the policy was void *ab initio.* This adjudication was made in conjunction with the court's approval and confirmation of a Settlement Agreement reached on December 19, 1975.

[*] Of the District of Wyoming, sitting by designation.

A background recital of the various proceedings involving King and King Resources Company is required.

This suit is but one of the many lawsuits resulting from the demise of the far flung and elaborate business empire spawned by King. Following the collapse of the empire, King Resources and Imperial-American Resources were placed in reorganization proceedings, while King and The Colorado Corporation were placed in "straight" liquidation proceedings, all under the Bankruptcy Act. The litigation which has since ensued and the great number of concerned parties who have been involved, directly or indirectly, evidence the massive and immensely complex problems which have besieged the courts, particularly the United States District Court for the District of Colorado.

American's complaint named as defendants King Resources Company, the Trustees of King Resources Company in Chapter X bankruptcy proceedings, and several individuals, including King, who are sued in their individual capacities and as representatives of a class of all directors and officers of King related business entities defined as insureds under the policy and who may claim protective coverage thereunder. The American complaint also named as defendants a class of security holders and creditors of King Resources Company who were asserting claims and/ or who may assert future claims against directors and officers of King Resources Company creating liability under the policy.

The basic predicate for the rescission relief sought is that the officers/directors of King Resources Company knowingly misrepresented certain material facts in the June, 1968, application for insurance coverage, and that these misrepresentations were repeated when subsequent applications for increased coverage were tendered. The misrepresentations claimed were that while the applications stated otherwise, the officers/directors were well aware of certain untruths concerning self-dealings had, primarily by John King, with the Company's assets, and a number of known conflicts of interest. In *American Employers Insur-*

*ance Company et al. v. King Resources Co. et al.,* 545 F.2d 1265 (10th Cir. 1976), we observed:

> The cases all arose, directly or indirectly, as a result of King's elaborate, aggressive, and broad-ranging investment activities throughout the world and the subsequent demise of same. Their interrelationship is predicated upon King's involvement within each on a personal or corporate official basis.
>
> 545 F.2d, at 1267.

We set forth a detailed factual background of King's phenomenal rise and fall in the oil business during the period commencing 1955 to 1970, and an "overview" of his personal impact on the various companies prior to their demise in *King v. United States,* 545 F.2d 700 (10th Cir. 1976). We there stated:

> While each of the aforementioned companies had separate officers and directors, King was at all times active in their management affairs. He was particularly involved in the area of financing. The operations of the complex were elaborate, aggressive and broad-ranging throughout the world. The operation was on a streamlined, computerized program. The various corporations employed many persons. The complex was, in large measure, reflective of the aggressive, outgoing and fast-moving style and manner of King. . . .
>
> Largely because of the tempo set by King, it was the usual for accounting and legal documentations of the corporate activities to "tag behind" the day-to-day occurrences. . . .
>
> 545 F.2d, at 702.

The case before us here was, by motion, one of nine (9) actions which King previously sought to consolidate "for purposes of settlement only" in the Federal District Court for the District of Colorado. The denial of that motion was the subject of his appeal in *American Employers' Insurance Company et al. v. King Resources Co. et al., supra.* We there noted that the various actions had progressed to stages of tentative agreements and settlements but none

had been finalized. One of King's chief contentions on that appeal was that "the extremely complicated nature of these cases, as well as their interdependency, together with the conflicts of interest and other inherent problems regarding the approved settlements, mandate the need for a separate forum to afford all of the parties involved a fair, equitable, reasonable, and adequate determination of their rights, for purposes of settlement and enforcement of such overall settlement." 545 F.2d, at 1268. In response we stated that ". . . 'it would be nice,' if possible, for one judge to administer [i.e., order, adjudicate, and enforce] a final overall settlement disposition of all assets on a theoretically impartial, fair, and equitable basis for the debtors and creditors. However, the facts of this case and the law do not comport with the implementation of the requested consolidation settlement. The purpose of bankruptcy from the point of view of one deeply in debt is relief, while the purpose from the point of view of the creditor is that of salvaging some recovery. The public interest is sympathetic with both interests." 545 F.2d, at 1268. *We did not have before us in that case a settlement agreement arrived at by all of the interested and concerned parties, independent of the court, such as the settlement which King alone challenges in the instant case.*

The instant rescission action by American sought a judgment declaring its policy issued to King Resources Co. void *ab initio,* based upon alleged misrepresentations and/or omissions in its procurement. In the course of pre-trial sparring, the Court ordered that the cause proceed as a Rule 23 class action. Certain unnamed members of the defendant class were permitted to intervene as parties defendant, including Arthur Anderson and Co., the State of Ohio, and the plaintiff classes in the so-called "securities fraud" class actions which we refer to as the *Dietrich* plaintiffs. [*See King Resources Co. et al. v. Baer et al.,* Nos. 76–1133, –1134, –1135, –1136 (10th Cir., filed April 12, 1977)]. By June of 1973, various parties to the American rescission action, as well as parties to many related and complex lawsuits, i.e., the securities fraud class action suits and actions involving the Chapter X Reorganization proceedings, commenced private settlement negotiations. The untold time, expense and efforts of the great numbers of parties proved fruitful, evidenced by a settlement agreement arrived at on June 18, 1975. *All of the interested, affected and concerned parties had signed this agreement as of July 10, 1975, except American, King and Arthur Anderson & Co.* King had been advised by two of his attorneys not to sign the agreement. *Thereafter, Arthur Anderson & Co. executed a modified settlement agreement and American tendered a settlement offer, as part of the overall agreement, subject to the Court's approval which is before us in the case at bar.* At about that time, American had received notice of some thirty lawsuits involving many more claimants it would be required to defend if the policy were valid. In compromise of its potential exposure, American offered to contribute $3,375,000.00 to the settlement, conditioned on the approval and entry of the *ab initio* order relieving it from any and all liability under the policy.

On July 27, 1975, the Court determined that there was *probable cause* to believe that the modified agreement was fair, adequate and reasonable. It directed that all parties be notified of a hearing which was to commence on November 12, 1975, to determine whether a *final* determination of fairness, adequacy and reasonableness could be arrived at. *The printing and mailing costs of notices of the aforesaid hearing were approximately $130,000.00*; they included notice requirements relating to the securities fraud and reorganization cases. Final hearings on the proposed modified settlement agreement were held on November 12 and 13, 1975. *At that point in time, the only objector to the proposed modified settlement agreement was appellant John M. King.* He appeared at the proceedings *pro se* and fully participated. The District Court accorded King wide latitude. Following the hearings, the Court reviewed the modified proposed settlement agreement,

the court file, including transcripts of pretrial hearings, testimony, documentary exhibits, answers to interrogatories, pleadings, statements of position, extensive briefs and the objections lodged by King, before determining that the matter was then ripe for final disposition. [R., Vol. II, p. 170.] The Court stated that the proponents of the settlement agreement had adequately addressed their proof to a ten factor test which the Court had enumerated in an April 10, 1975, Order. The Court considered each factor independently in reaching its ultimate decision to approve the modified settlement, to-wit:

(1) The balance between the likelihood of plaintiff's or defendants' success should this case go to trial vis a vis the 'concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures.' *Glicken v. Bradford,* 35 F.R.D. 144, 152 (S.D.N.Y.1964); *see also, Purcell v. Keane,* 54 F.R.D. 455 (E.D.Pa. 1972).

(2) The prospect of complex and protracted litigation if the settlement is not approved. *In re Four Seasons Securities Laws Litigation,* 58 F.R.D. 19 (W.D.Okla. 1972).

(3) The proportion of the class members who do not object or who affirmatively support the proposed settlement. *Cannon v. Texas Gulf Sulphur Co.,* 55 F.R.D. 308 (S.D.N.Y.1972).

(4) The competency and experience of counsel who support the settlement. *Percodani v. Riker-Maxson Corp.,* 50 F.R.D. 473 (S.D.N.Y.1970).

(5) The ratio between *total* benefits to the defendant class provided by the settlement in comparison to the maximum dollar limits of the Employers' policy. *Fox v. Glickman Corp.,* 253 F.Supp. 1005 (S.D.N.Y.1966).

(6) The relative benefits to be received by individuals or groups within the class. *Norman v. McKee, supra.*

(7) The *capacity* of Employers' to pay a judgment up to the maximum limits of the subject policy but more than the dollar value it would give by virtue of the settlement. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974).

(8) The current and projected financial condition of KRC in reorganization as such condition relates to the value of benefit to be conferred on members of the defendant class who may receive stock in the reorganization company. (i. e., what effect will 3 million dollars to be paid the trustee in reorganization have on the value of reorganization stock?) *Fox v. Glickman Corp., supra.*

(9) The nature and breadth of releases to be obtained by Employers' and KRC directors and officers as a result of the settlement. *Fox v. Glickman, supra.*

(10) The extent to which the settlement is truly the product of "arms-length" bargaining, and not of fraud or collusion. *Young v. Katz,* 447 F.2d 431 (5th Cir. 1971).

[R., Vol. II, pp. 171, 172.]

The trial court then observed that the "sheer magnitude of this litigation" prompted the Court to state its findings in a summary fashion [R., Vol. II, p. 172]. In addition to the jurisdictional and procedural findings, the Court entered findings pertinent to the challenge raised here, as follows:

\* \* \* \* \* \*

(B) The Rescission Action is properly maintainable as a class action and the class of defendants in the Action are adequately represented by the representatives of the class. In the Rescission Action, the interests of the representatives of the class are not adverse or hostile to the interests of the class members; also, the interests of the representatives of the class are identical with the interests of the members of the class.

(C) There is merit to plaintiff's contentions that the directors and officers liability policy was void ab initio because of false or fraudulent misrepresentations on the initial application and on subsequent requests for increases in coverage; and even if valid, certain defenses could preclude recovery under the policy.

(D) Similarly, there is merit to the denial by the defendants in the Rescission Action of plaintiff's contentions and to the defendants' contention that plaintiff knew or should have known of the facts amounting to alleged fraudulent misrepresentations.

(E)(1) Therefore the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures outweigh the benefits of either plaintiff's or defendants' success at trial.

\* \* \* \* \* \*

(E)(3) The vast majority of the class members either affirmatively support the proposed settlement or at least do not object to it; in fact, the only objector is John M. King, one of the former officers and directors of King Resources Corporation.

(E)(4) The competency and experience of counsel who support the settlement is unquestioned and unquestionable.

(E)(5) The maximum liability under plaintiff's policy could be $10,000,000, although the testimony at the hearings indicated that the probable maximum liability would be $5,000,000. The total cash contribution by plaintiff through this settlement will be $3,375,000. The ratio of benefits to limits, then, is either approximately 1 to 3 or 1 to 1.5, both of which are well within the limits accepted by courts in the past in considering comparable proposed settlements.

(E)(6) With one exception, all individuals or groups within the class have either positively indicated satisfaction with the relative benefits to be received under the settlement, or have failed to object. Therefore only the benefits to be received by John M. King need now be considered. The proponents of the settlement argued convincingly that the benefits to Mr. King are fair, adequate, and reasonable—even though he is not a signatory to the settlement agreement, absented himself from participating in the negotiations, and now objects to it. The benefits to Mr. King under the settlement are put into proper perspective by the fact that even if Mr. King were to receive the *maximum* recovery he claims possible under the policy, he would *still* be open to tremendous liability that would be eliminated by the settlement.

\* \* \* \* \* \*

(E)(8) The current and projected financial condition of King Resources Corporation will be greatly enhanced by the infusion of the money planned in this settlement and thus there is value in the settlement to the members of the defendant class who may receive stock in the reorganization company.

(E)(9) The releases to be obtained by plaintiff and the King Resources Corporation officers and directors as a result of this settlement are fair, adequate, and reasonable to the parties involved.

(E)(10) There has been no serious challenge that this proposed settlement was anything but the product of "arms-length" bargaining and the court finds that it was.

(E)(11) The Settlement Agreement Dated June 18, 1975, together with the Agreement Among Arthur Anderson & Co., Timothy G. Lowry and Peterson Ross Rall Barber & Seidel, and the November 28, 1975 Supplement to Settlement Agreement, and the Trustee's Application No. 187, taken in their totality, represent a fair, adequate, and reasonable compromise between the various parties and is in the best interests of the parties.

\* \* \* \* \* \*

[R., Vol. II, pp. 172, 173, 174.]

King's *pro se* brief on appeal is aimed at his principal contention throughout: That the modified settlement agreement is manifestly unfair to him. At a July 10, 1975, hearing, King argued that ". . . in all of these proceedings. . . . everybody seems to be getting taken care of with the exception of Mr. Boucher and myself. Everybody is being taken out. The Board of Directors of King Resources Company, who participated in detail in every single solitary act that we are being sued under, are

all of a sudden being exempted . . . Mr. Boucher and I therefore are being tried, if Your Honor will forgive me for it, under in my view . . . what is called the 'Uniform Son of a Bitch Rule,' and I feel strongly it is unfair and inequitable, because for a period of ten years most of these men that we are speaking about shared their responsibilities with us day to day, participated in board meetings and voted on the matters conducted and done, and now all of a sudden they are exempted . . ." [R., Vol. I, p. 13.] Counsel for King Resources Company and its Trustee, Mr. Baer, responded. He pointed out that any claims the Trustee or King Resources Company have against King, covered by the American policy, are being completely settled *but that the Trustee is reserving the right to proceed against King and other directors and, significantly, that King has not surrendered any claims whatsoever even though the settlement constitutes a complete release of King from all of the stockholders and debenture holders of King Resources Company, together with specific relief from the Trustee.* [R., Vol. I, pp. 24–26.]

King's attack on appeal seems to involve three basic contentions: (1) that the modified settlement agreement, as it relates to him, is the product of collusion and was not reached in good faith, arms-length bargaining, (2) that the settlement extinguishes the rights of certain members of the plaintiff class (in the securities fraud cases) from participating therein, and (3) that non-settling parties, including King, and those who are not parties to the instant rescission action, are enjoined from making a claim against the insurance policy which has been declared void *ab initio* over his objection without affording him due process of law. These are "broadside" attacks, lacking in specificity. The only contentions we have been able to identify with some degree of certainty are that (a) while the settlement agreement grants King the option to receive $50,000.00 for .counsel fees, King seems to insist that he should be allowed at least $350,000.00 for such fees and, (b) a fair settlement should require that the Trustee

of King Resources Company completely release King from *all claims*, including those not covered by the American liability policy. In lieu of disposing this appeal based upon a discussion of King's contentions, as set forth above, we must direct our remarks to the factual and legal settings which support the trial court's judgment.

## I.

The record reflects that the trial court allowed King every right and courtesy, and, in fact, unusually broad latitude relative to his *pro se* appearances and participations during both the preliminary and final hearings leading to the final order granting American's relief void *ab initio* and approving the modified settlement. King was accorded full opportunity to establish that said agreement was prejudicial to his rights as compared to the rights of the multitude of other interested and affected parties. He was not denied due process of law.

We previously referred to the complexities resulting from the wide ranging ventures of King's corporate enterprises. The impact of their demise has almost overwhelmed the dockets and the available judge power of the United States District Court for the District of Colorado. Litigation independent of the bankruptcy proceedings does have, of course, a direct, significant bearing on the ultimate outcome of the reorganization efforts. On the one hand the Court must be concerned with the rights and liabilities of shareholders, debenture holders, interest-point holders, secured creditors, unsecured creditors, officers, directors, agents and employees; and, on the other hand, the Court must be concerned with the pursuit of claims within the domain of trustees on behalf of the bankrupt corporations. The ultimate projected result involves the proper, just and equitable settlement and distribution of assets among the untold claimants.

The modified settlement agreement challenged by King was literally "hammered out" over a period in excess of two

years by some forty (40) distinct representative groups or parties holding sharp, antagonistic and conflicting interests. As the trial court aptly observed, the record here reflects the high degree of integrity, skill, and experience lent by counselors representing these strongly competing interests in reaching the modified settlement agreement. The very fact that King and King alone actively stands on the "outside" opposing the settlement agreement is of striking significance and import. Nothing in this record supports King's general conclusionary attacks on the settlement agreement in terms of its alleged bad faith unfairness as to him. This is particularly so in view of the tremendous efforts leading to the settlement and the "give and take" involved. A bankruptcy court is inherently a court of equity. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

■ We hold that the district court's final order rescinding the American policy as void *ab initio* entered concurrent with the Court's approval of the modified settlement agreement is supported by substantial evidence, and is, in its totality, a fair, adequate and reasonable compromise between the varied and conflicting interests. The order is well founded on the ten factor test applied by the trial court, which drew upon leading decisions of courts which have approved or disapproved settlements involving class actions. We adopt, by reference, the authorities relied upon by the district court in support of its findings and/or conclusions following the application of the ten factor test, *supra.*

King was not denied due process in his challenges raised in the district court. He was afforded every opportunity to present his contentions going to the unfairness of the proposed settlement. In *In Re Four Seasons Securities Laws Litigation*, 502 F.2d 834 (10th Cir. 1974), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974), we recognized that the ". . . touchstones of due process in class actions have always been notice and adequacy of representation, . . ." and that ". . . the purpose of class actions is to avoid

multiplicity of suits . . ." and to promote the ". . . interest in settlement of complex litigation." 502 F.2d, at pp. 842, 843, 844.

In relation to King's complaint that he and Mr. Boucher have been "singled-out" for ill-treatment while other officers and directors are permitted, in effect, to "go home free," the record simply does not support this allegation. Even though the approved settlement agreement *does not* eliminate certain claims yet outstanding against him, Mr. Boucher has nevertheless executed the settlement agreement. Furthermore, Mr. Baer, the Trustee of King Resources Company, testified that he had undertaken extensive investigation under Chapter VII, 11 U.S.C.A. § 110, and had not discovered any evidence that a director or officer other than King was financially obligated to King Resources Company or had gained any personal advantage in transactions within the Company. [R., Supp. Vol. II, pp. 126, 127.] This was not controverted.

## II.

The district court's final approval of the modified settlement agreement was, in our judgment, in compliance with the requirements in Chapter X. *See* Bankruptcy Act, 11 U.S.C.A. §§ 556–580, 599 and 616. The Court's confirmation was firmly anchored to the requisite findings that: (1) the plan is fair, equitable and feasible, (2) the plan, as proposed, and as accepted by all interested parties with the exception of King, was arrived at in good faith, and (3) full and complete disclosure of all known material facts were presented to the Court.

■ The District Court has discretionary power to approve compromises involving claims and interests in reorganization proceedings, including class actions, and its judgment will not be reversed except for abuse of discretion or if clearly erroneous. *Protective Committee v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), *rehearing denied*, 391 U.S. 909, 88 S.Ct. 1649, 20 L.Ed.2d 425 (1968); *Case v. Los Angeles Lumber Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), *rehearing denied*, 308

U.S. 637, 60 S.Ct. 258, 84 L.Ed. 529 (1939); *King v. Baer,* 482 F.2d 552 (10th Cir. 1973), *cert. denied,* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973); *In re Four Seasons Nursing Centers of America, Inc.,* 472 F.2d 747 (10th Cir. 1973); *Occidental Petroleum Corporation v. Walker,* 289 F.2d 1 (10th Cir. 1961). *See also:* *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *In re Equity Funding Corporation of America,* 519 F.2d 1274 (9th Cir. 1975); *In re Wonderbowl, Inc.,* 515 F.2d 18 (9th Cir. 1975), *cert. denied,* 423 U.S. 869, 96 S.Ct. 134, 46 L.Ed.2d 99; *City of Detroit v. Grinnell Corporation,* 495 F.2d 448 (2nd Cir. 1974); *In re Bermec Corp.,* 445 F.2d 367 (2nd Cir. 1971); 11 U.S.C.A. § 622; Fed.Rules Civ.Proc. rule 23(e), 28 U.S.C.A.; 11 Remington on Bankruptcy, § 4522 (1961); Moore's Bankruptcy Manual, Corporate Reorganization, § 0.228 (1939).

The Bankruptcy Act specifically provides that any creditor or stockholder who had previously accepted the plan proposed to be altered or modified and who does not file a written rejection will be deemed to have accepted it. 11 U.S.C.A. § 623.

WE AFFIRM.