PER CURIAM:
Holders of subordinated debentures issued by the debtor appeal the bankruptcy court’s order subordinating their claims to those of unsecured general trade creditors. We affirm.
Holiday Mart, Inc., a Hawaii corporation involved in retail merchandising and real estate development, sold approximately $3,500,000 in non-negotiable debentures to some 900 Hawaii residents between 1975 and 1977. The debentures were subject to terms and conditions printed on the back of each certificate, one of which read:
This debenture is subordinate in right to all debts or liabilities of the corporation, whether heretofore or hereafter incurred by the corporation, except for debts or liabilities expressly subordinated thereto, or other debentures of this issue *432 and for debentures of subsequent issue. In the event of any dissolution of the corporation and liquidation of its assets, all debts or liabilities superior in right to this debenture shall be paid before any part of the assets of the corporation is applied to the payment of this debenture. This debenture and other debentures of this issue and debentures of issues prior or subsequent thereto shall be equal in right.
On December 30,1977, the debtor filed an original petition for reorganization under Chapter XI of the Bankruptcy Act of 1898, 11 U.S.C. §§ 701-799 (1976) (repealed 1978). Following the first meeting of creditors, the debenture holders filed proofs of claim based on the debts reflected by the debenture certificates. On December 1, 1980, the receiver filed objections to allowance of the debenture holders’ claims stating that each claim “should be subordinated to all other general unsecured creditors of this estate, for the reason that the debenture upon which said claim is based specifically provides that it is subordinate in right to all other debts or liabilities of the debtor.”
On December 5, 1980, the bankruptcy court converted the proceeding from reorganization to bankruptcy liquidation. Extensive briefs were filed on the question of subordination. Without taking evidence, the district court judge ordered subordination of debenture holders’ claims to those of general unsecured trade creditors. Debenture holders appeal.
The debenture holders argue on several theories that, in light of the circumstances surrounding the purchase and sale of the debentures, no contract was formed that included the subordination clause. This contention was not submitted to the bankruptcy court and will not be considered for the first time on appeal. See Merchants Refrigerating Co. v. United States, 659 F.2d 116, 117 (9th Cir.1981).
The debenture holders next argue that even if the subordination provision is part of the contract, it would be inequitable to enforce it because the debtor fraudulently induced them to purchase the debentures and violated various provisions of state and federal securities laws in connection with their sale. The debenture holders contend they should be permitted to submit evidence demonstrating their right to rescind the debenture contracts. They contend that if they make such a showing they should be entitled to the same priority as those trade creditors who cannot show reliance on the subordinated character of the debenture debt. The district court rejected proof of fraud or securities act violations and held the debenture holders subordinate to general secured creditors without proof of reliance on the subordination provision.
The bankruptcy court exercises broad equitable powers in deciding whether to subordinate claims. Pepper v. Litton, 308 U.S. 295, 296, 304-07, 60 S.Ct. 238, 240, 244-46, 84 L.Ed. 281 (1939). The district court’s equitable determination to subordinate the debenture holders’ claims despite their alleged right to rescission “is addressed to the sound discretion of the Bankruptcy Court, and the scope of review is accordingly limited to a determination of whether there was an abuse thereof.” In re Whitehead, 583 F.2d 1104, 1107 (9th Cir. 1978); In re Wolverton, 491 F.2d 361, 365 (9th Cir.1974).
The debenture holders acknowledge that valid contractual subordination agreements have been uniformly enforced according to their terms by bankruptcy courts without proof of reliance by senior claimants. In re Credit Industrial Corp., 366 F.2d 402, 408 (2d Cir.1966). They rely, however, upon an exception said to apply when the subordination agreement is voidable:
Reliance may become a relevant factor where equitable considerations require its consideration, namely, where the subordination agreement itself is invalid. When a junior creditor establishes that the subordination agreement is unlawful, it may be reasonable and necessary, if equity is to be done, to require a senior creditor to prove that he relied on the subordination agreement, without actual or constructive knowledge of any infirmity in the agree *433 ment, in advancing funds to the bankrupt as a condition to receiving priority in the distribution of the bankrupt’s estate.
366 F.2d at 409 (citations omitted).
In re Credit Industrial Corp. did not hold that reliance is necessarily relevant when a subordination agreement is allegedly unlawful, but only that it “may” be. Later decisions by the Second Circuit and by this circuit suggest that subordination of claims of defrauded securities.holders is appropriate without proof of reliance.
In In re Stirling Homex Corp., 579 F.2d 206 (2d Cir.1978), the court held that stockholders asserting fraud in the purchase of stock from a bankrupt issuer and claiming the right to rescind were properly subordinated to general creditors of the bankrupt corporation. The ruling was based on three grounds. The first was that creditors rely upon the “equity cushion” created by the investment of stockholders, and that failure to subordinate the claims of stockholders to those of general creditors would defeat the reasonable expectations of both. The second was that stockholders alone take the risk of unlawfulness in the issuance of the securities they purchase, and there was no reason to shift any part of this risk to creditors who have not been offered and have not purchased the stock. 579 F.2d at 214. Finally, only stockholders have the benefit of potential profit from the enterprise and it would be inequitable to shift losses to the creditors. Id. at 215. The court also noted Congress was then considering a proposal, later enacted into law, to subordinate claims for rescission of the purchase or sale of a security to all claims senior or equal to the interest represented by the security. See Section 510, Bankruptcy Reform Act of 1978, 11 U.S.C. § 510(b)(Supp. V (1981)).[1]
For the same reasons we held in In re U.S. Financial Inc., 648 F.2d 515 (9th Cir. 1980), that defrauded stockholders claiming rescission could not be given the status of general creditors, and held in In re THC Financial Corp., 679 F.2d 784 (9th Cir.1982), that this rule also applies to defrauded stockholders of a wholly owned subsidiary of a bankrupt corporation.
There is no suggestion in any of these cases that subordination is dependent upon a showing of reliance by individual general creditors. In each of these cases, a dispute between innocent parties was involved, not one pitting the company against the stock or debenture holders it purportedly victimized. Even if the securities holders were able to prove the company defrauded them, they would not have shown their position should be improved at the expense of the general creditors. That is the relationship at issue, and fraudulent dealings by the company do not alter it.[2]
Essentially the same considerations apply to defrauded subordinated debenture holders as apply to defrauded stockholders and dictate the same result.
As noted in Stirling Homex, “equity prefers the claims of innocent general creditors over the claims of shareholders or subordinated creditors deceived by officers of the corporation.” 579 F.2d at 213 (emphasis added). Purchasers of subordinated debentures provide a fund upon which trade creditors would normally rely in assessing the risk of extending credit, and both the purchaser of subordinated debentures and general creditors would anticipate that in the event of bankruptcy the claims of the general creditors would be paid before those of subordinated debenture holders. Purchasers of debentures, like purchasers of stock, alone assume the risk of fraud or securities act violations by the issuers- of the securities they purchase, and there is no reason to ask general creditors who did not purchase de *434 bentures to share in any part of that risk. Finally, although subordinate debenture holders do not participate in the profits of the enterprise, the additional risks they assume are presumably fully compensated by the interest they are guaranteed, compensation not available to general creditors.
In In re Weis Securities, Inc., 605 F.2d 590 (2d Cir.1978), the Second Circuit extended the reasoning of the stockholder cases to subordinated lenders. The court ruled that customers of a bankrupt securities broker-dealer need not prove reliance for the subordination agreements to be enforced.[3] The court noted that the purpose of the subordinated loans was to permit the broker to comply with SEC net capital requirements, and that these requirements were intended to assure customers of the broker-dealers of the stability and integrity of the securities market and of broker-dealers specifically. The court concluded that it would undermine this public purpose to require proof by the customers of actual reliance upon the subordination agreements. Id. at 596.[4]
Because all of Weis’ assets were to have been exhausted after satisfaction of the customers’ claims, the Weis court found it unnecessary to reach the question whether general creditors must prove reliance to prevent rescission of subordination clauses. 605 F.2d at 594. Although the policy considerations favoring similar treatment of general creditors are not based on specific statutory or regulatory provisions, we think they are equally compelling and argue for the same result.
The principal pre-amendment commentary supports this conclusion. It noted that considerations affecting rescinding stockholders were to be “equally applicable to holders of subordinated debentures and to other creditors whose debt securities are contractually subordinated.” Slain & Kripke, The Interface Between Securities Regulation and Bankruptcy — Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer’s Creditors, 48 N.Y.U.L.Rev. 261, 268 (1973). See also id. at 263 (normal expectation is that equity investment and junior debt will bear first losses), 285 (general creditor relies on the equity or other cushion provided by buyers of capital stock and subordinated debt), 294 (each creditor should be presumed to have relied upon all prior investment in equity and junior debt).[5] The Slain-Kripke article was favorably cited in both Stirling Homex Corp., 579 F.2d at 214, and U.S. Financial Inc., 648 F.2d at 519-20.
While not applicable to this case, the new-statute, 11 U.S.C. § 510(b), is nonetheless instructive. It is written in terms of “any claim for rescission of a purchase or sale of a security” without distinction between equity securities and debt securities. Commentators have construed the statute to apply to both. See 3 Collier on Bankruptcy ¶ 510.03 (15th rev. ed. 1983).
*435 While the foregoing discussion provides sufficient grounds to affirm the decision, other equitable concerns underscore the correctness of the conclusion in this case. Although three years have passed since this bankruptcy proceeding was commenced, the trade creditors still have not received their full share from the Holiday Mart estate. If hearings were required on the validity of the rescission claims and the reliance of creditors on the subordination clause, the 450 debenture holders would have to prove their right to rescission for Holiday Mart’s fraud or violation of the state and federal securities laws; and if those allegations proved to be true, each of the almost 300 trade creditors then would be required to prove individual reliance on the subordination provisions of the debentures in extending credit to Holiday Mart. The inappropriateness of such a requirement is suggested by In re Cartridge Television, Inc., 535 F.2d 1388 (2d Cir.1976), where the court affirmed the bankruptcy court’s refusal to postpone distribution until stockholders’ fraud claims were adjudicated, based upon the often protracted nature of securities litigation, the resulting pressure on the trustee to settle the contingent claims to avoid unnecessary delay in distribution, and the Bankruptcy Act’s purpose “to promote the prompt liquidation of each debtor’s estate and the expeditious distribution of the proceeds to the bona fide general creditors .... ” Id. at 1390.
We find no abuse of discretion in the bankruptcy court’s determination that the claims of subordinated debenture holders should be subordinated to those of general creditors without requiring proof of reliance.
AFFIRMED.

. Any claim for rescission of a purchase or sale of a security of the debtor or of an affiliate or for damages arising from the purchase or sale of such a security shall be subordinated for purposes of distribution to all claims and interests that are senior or equal to the claim or interest represented by such security.
11 U.S.C. § 510(b) (Supp. V 1981).

. Of course, the situation would be different if the general creditors participated in or were aware of the fraud.

. The court made mention of In re Credit Industrial Corp.’s suggestion that reliance might be required in some cases, but refused to apply the suggestion in the case before it. 605 F.2d at 594-95.

. For similar reasons, we recently refused to allow the Bank of America to offset its deposit liability to an insolvent Puerto Rican bank by the amount owed to it on a subordinated capital note. Public confidence and the stability of the banking system were at stake. FDIC v. Bank of America, 701 F.2d 831, 839 (9th Cir. 1983).

. The authors adopt inconsistent positions with respect to those who extended credit after the sale of subordinated securities and those whose actions occurred before the sale. They suggest that the subsequent creditors be presumed to have relied on the subordination clauses but that the burden of proof on reliance be shifted to prior creditors. 48 N.Y.U.L.Rev. at 289, 294. This approach loses sight of the primary distinction between claimants: the quality of their interest. Just as unsecured trade creditors expect to take after secured creditors, they also expect to take ahead of securities holders whose notes are expressly subordinated to existing and future liabilities. As the authors themselves point out, creditors have “the normal expectation that equity investment and junior debt will bear the first losses of the enterprise.” Id. at 263. Pre-investment creditors are no different from post-investment creditors, for whom “[rjeliance ... while difficult to demonstrate, is nonetheless real.” Id. at 289.