In re **GILES WORLD MARKETING, INC., Debtor.**

**CAREY AVIATION, INC., Plaintiff,**

v.

**GILES WORLD MARKETING, INC., and Varga Aircraft Corporation, Defendants.**

Bankruptcy No. 82–2005–HL.

Adv. No. A83–0025.

United States Bankruptcy Court, D. Massachusetts.

April 1, 1983.

Ronald McDougald, Bove, Charmoy & McDougald, Boston, Mass., for debtor.

Steven Hoort, Ropes & Gray, Boston, Mass., for Carey.

## MEMORANDUM ON CLAIM OF CAREY AVIATION, INC.

HAROLD LAVIEN, Bankruptcy Judge.

This case presents issues of technical construction of the Uniform Commercial Code as applied in a rather unique bankruptcy situation. The facts are as follows. On November 3, 1982, the defendant and debtor, Giles World Marketing (hereinafter Giles) filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The other defendant is Varga Aircraft Corporation (hereinafter Varga), an Arizona corporation. In June of 1982, Giles seized all the assets of Varga pursuant to its rights under a security agreement dated June 19, 1981.[1] The plaintiff, Carey Aviation, Inc., (hereinafter Carey) entered into a purchase agreement with Varga dated March 16, 1982, whereunder it agreed to purchase a certain model Varga Aircraft for the sum of $29,-522.25. Carey made a $10,000 deposit on such aircraft by check dated April 9, 1982. On May 20, 1982, Carey was notified that the plane was two-thirds completed and, pursuant to the purchase agreement, another $10,000 was due on the aircraft. Carey paid the additional $10,000 by check dated May 27, 1982. After Giles seized the assets of Varga, Carey instituted suit in Arizona for possession of the aircraft. Carey now asks this Court to grant it possession of the aircraft upon payment of the balance of the purchase price into an escrow fund and then allow Carey to make deductions from that balance for nonconformities or missing items. Giles raises a number of objections to the granting of such relief.

---

1. Most of these facts have been submitted on pleadings of the parties. Only one witness has testified in this proceeding, Robert F. Carey, the President of the plaintiff. The debtor has chosen to submit on memorandum and accompanying affidavits.

Mr. Robert Carey, President of Carey Aviation, testified that he examined the airplane in early August of 1982, after Giles had taken possession. He testified that the aircraft was almost complete except it was missing a propeller and certain optional radio and radar equipment. The plane also needed to be painted.

Initially, Giles argues that Carey Aviation is not the proper plaintiff. The purchase agreement shows "Bob Carey/Carey Aviation" as the purchaser and is signed by "R.F. 'Bob' Carey." The two checks submitted to Varga were checks of "Kreiger & Carey" and "C.W. Kreiger M.D. or Robert Carey." Mr. Carey testified that he and Dr. Kreiger were financing the aircraft for Carey Aviation and that they intended title to go to Carey Aviation. He also testified that there was a corporate resolution authorizing the purchase. It is not necessary for the court to make a finding on plaintiff's technical objection. The purchase agreement stated the sale was to Carey Aviation and was allegedly signed by Mr. Carey as the agent of the corporation authorized to purchase the aircraft. How the corporation finances the purchase is not relevant to the issues in this case.

Giles argues that Carey is not a buyer in the ordinary course of business under the Uniform Commercial Code (UCC) and therefore does not take free of Giles security interest.[2] Carey argues that it is a buyer in the ordinary course and as such has the right to possession of the airplane and to deduct from the balance of the purchase price for any nonconformities.

Although both parties focus on the issue of whether Carey is a buyer in the ordinary course and would therefore take free of Giles security interest pursuant to UCC § 9–307(1),[3] the Court does not need to make that determination. Even if Carey were a buyer in the ordinary course, its rights under Article 2 of the Uniform Commercial Code are limited. Under the Code, the buyer who does not have possession has three possible theories under which he can establish a right to possession. These remedies include the right to recover in certain insolvency situations, UCC § 2–502, the right to specific performance under UCC § 2–716(1) and the right to replevin under UCC § 2–716(3). *See* Smith, *Title and The Right to Possession Under the Uniform Commercial Code,* 10 Bost.Coll.Ind. and Comm.L.Rev. 39 (1968); Speidel, *Advance Payments in Contracts for Sale of Manufactured Goods: A Look at the Uniform Commercial Code,* 52 Cal.L.Rev. 281, 286–7 (1964).

Section 2–502 provides:

§ 2–502. Buyer's Right to Goods on Seller's Insolvency.

(1) Subject to subsection (2) and even though the goods have not been shipped a buyer who has paid a part or all of the price of goods in which he has a special property under the provisions of the immediately preceding section may on making and keeping good a tender of any unpaid portion of their price recover them from the seller if the seller becomes insolvent within ten days after receipt of the first installment on their price.

(2) If the indentification creating his special property has been made by the buyer he acquires the right to recover the goods only if they conform to the contract for sale.

---

**2.** The interest of the parties in this proceeding must be determined by reference to the applicable state law. Here the applicable law would be Arizona law since Arizona is the situs of the aircraft, Varga's principal place of business where the aircraft was manufactured. *State of Ohio v. Four Seasons Nursing Centers of America, Inc.,* 465 F.2d 25, 27–28 (10th Cir.1972). Additionally, agreement between Varga and Giles provided that the law of Arizona would govern. Arizona has adopted the Uniform Commercial Code and neither party disputes the applicability of that law.

**3.** § 9–307. Protection of Buyers Goods

(1) A buyer in ordinary course of business (subsection (9) of Section 1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

Section 2–502 does not apply because there has been no evidence that Varga became insolvent within 10 days after receipt of the first installment. However, the Court would note that if Carey did fit within this limited set of facts § 2–502, Carey would only have the right to recover if the goods conform to the contract for sale. Carey asserts that the goods do not conform.

Section 2–716 provides:

§ 2–716. Buyer's Right to Specific Performance or Replevin

(1) Specific performance may be decreed where the goods are unique or in other proper circumstances.

(2) The decree for specific performance may include such terms and conditions as to payment of the price, damages, or other relief as the court may deem just.

(3) The buyer has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered.

Specific performance is only appropriate when the goods are unique or "in other proper circumstances." There has been no showing of uniqueness much like the past World War II automobile cases. *See e.g., Poltorak v. Jackson Chevrolet Co.,* 322 Mass. 699, 79 N.E.2d 285 (1948). Further, there has been no showing of other circumstances to warrant ordering specific performance. Therefore, Carey must assert a right to replevin. However, no evidence has been offered as to Carey's inability to cover. Unless the buyer cannot cover, he has no right to replevin.

Carey argues that its rights are governed by UCC § 2–714 which provides for buyer's damages in regard to accepted goods.[4] However, § 2–714 only applies if the buyer

has accepted the goods. Acceptance is defined in UCC § 2–606 which provides:

§ 2–606. What Constitutes Acceptance of Goods

(1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection (1) of Section 2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

(2) Acceptance of a part of any commercial unit is acceptance of that entire unit.

Carey has not taken any action which would indicate that it has accepted the goods. In fact, since Varga never tendered the goods to Carey, Carey had no opportunity to accept the goods. Since Carey has not accepted the goods, it has no right to the remedies under UCC § 2–714.

Since Carey has no right to possession under either UCC §§ 502 or 716, its remedies are set forth in UCC § 2–711(1) which provides:

§ 2–711. Buyer's Remedies in General; Buyer's Security Interest in Rejected Goods

(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2–612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

---

4. § 2–714. Buyer's Damages for Breach in Regard to Accepted Goods

(1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2–607) he may recover as damages for

any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or

(b) recover damages for non-delivery as provided in this Article (Section 2–713).

Carey has a claim for damages or a claim to recover the purchase price it has paid. Carey does not have a right to recover the goods. Although this seems like a harsh result, it represents the Uniform Commercial Code's attempt to balance the competing interests of secured creditors, financing buyers and other general unsecured creditors. *See* Speidel, *supra*, at 237. Many law review articles have been written which warn of the lack of protection for financing buyers who fail to take a security interest or make an agreement as to passage of title. *See* Speidel, *supra;* Smith, *supra;* Note, *Bankruptcy and Article Two of the Uniform Commercial Code: The Right to Recover the Goods Upon Insolvency,* 79 Harv.L.Rev. 598 (1966); *see also* Schrag & Ratner, *Caveat Emptor—Empty Coffer: The Bankruptcy Law Has Nothing to Offer,* 72 Col.L.Rev. 1147 (1972).

Based upon the above Memorandum, judgment will be entered for the defendant Giles World Marketing. Carey's request for relief from stay to take possession of the airplane or for adequate protection is denied.